In re Gordon Wayne ANDERSON and Sharon Sue Anderson, Debtors.

Bankruptcy No. 79–03221–22–PZ.

United States Bankruptcy Court,
S. D. California.

March 3, 1980.

George Ritner, San Diego, Cal., Atty., for debtors.

Harry W. Heid, San Diego, Chapter 13 Trustee, pro se.

## MEMORANDUM OF DECISION

ROSS M. PYLE, Bankruptcy Judge.

### FACTS

On November 27, 1979, the debtors filed their joint petition for relief under Chapter 13 of Title 11 of the United States Code and an Order for Relief was granted.

The § 341(a) meeting of creditors was held and concluded on January 7, 1980, and the case was transferred to this Court on that date for a hearing to determine whether the Debtors' Chapter 13 plan filed on November 27, 1979, should be confirmed. The confirmation hearing was continued to January 28, 1980, at which time this Court announced its decision that the plan should not be confirmed. This Memorandum details that decision.

Mr. Anderson is a fire control technician on active duty with the United States Navy. The family's net monthly income includes take home pay for Mr. Anderson of $800.00 plus a quarter's allowance of $216.00 for a total net monthly income of $1,016.00. This income supports Mr. and Mrs. Anderson and their two small children.

The Summary of Debts filed by these debtors list $10,022.00 of unsecured debts and $2,805.00 of secured debts.

The debts listed include the following:

a. Freedom Finance is owed $1,882.00 payable at a monthly contract rate of $98.00 and secured by a 1975 Chevrolet Vega Hatchback (and certain unspecified furniture).

b. San Diego Navy Federal Credit Union is owed $798.00 payable at a monthly contract rate of $100.00 and secured by a 1974 Datsun 610 Stationwagon.

c. Wards is owed $2,115.00 on a charge account for miscellaneous charged items which account is payable at a monthly rate of $98.00. The debtors apparently consider the account to be secured by the miscellaneous purchased items, although the Wards debt is not listed as secured.

Under the terms of their plan, the debtors propose to pay 1% on their unsecured obligations which will amount to approximately $100.00 if all unsecured creditors file claims.

The plan lists the "fair value" of the Chevrolet at $1200.00 and, until paid the debtors propose that the Trustee pay Freedom Finance $65.00 per month plus 10% interest.

The plan lists the Datsun at a "fair value" of $800.00 and the debtors propose that the Trustee pay San Diego Navy Federal Credit Union $42.00 per month until paid, plus 10% interest.

The plan also proposes that Wards will be paid $8.00 per month on a $125.00 listed "fair value" for a television and stereo which the debtors apparently have singled out as being the collateral from the miscellaneous items which make up the Wards account.

To carry out the terms of their plan, the debtors promise $150.00 monthly payments to the standing Chapter 13 Trustee. The

Trustee estimates that, if all creditors, secured and unsecured, file claims, the debtors can fully perform under the proposed plan in approximately 15 months.

At the confirmation hearing, the debtors and their attorney asserted that their purpose in filing the above described Chapter 13 plan was to enable them to restructure the contracts on the two subject automobiles and the Wards account. They admitted that they could afford to make the monthly payments of $150.00 per month for a period longer than 15 months, but did not propose to do so since they intend only to pay 1% on the unsecured claims. The debtors further asserted that the restructuring of contracts with secured creditors pursuant to 11 U.S.C. § 1322(b)(2) as a sole purpose of Chapter 13 is legitimate and in good faith. The only apparent reason to pay even 1% is to satisfy the requirement of 11 U.S.C. § 1325(a)(4) that more than liquidation value under Chapter 7 of the Bankruptcy Code be paid.

## DISCUSSION

■ This Court does not agree that the proper sole purpose of a Chapter 13 plan is to rewrite a debtor's contracts with secured creditors. To the extent that a Chapter 13 plan rewrites a secured creditor's contract *incidental* to the carrying out of a plan, some alteration of contractual obligations is permissible. See 11 U.S.C. § 1322(b)(2).

What makes this plan impermissible is that the effect of the 1% treatment of unsecured claims creates a plan which has the single purpose. of restructuring the debtors' contracts to purchase the two automobiles, the television and the stereo.

What the debtors are attempting to do is to take advantage of the Chapter 13 provisions to rewrite their secured contracts [1] and yet avoid proceeding under the straight bankruptcy provisions of Chapter 7.

1. The restructuring of the contracts would lower the monthly payments, lower the interest rates, and, in the case of the debt to Freedom Finance secured by the 1975 Chevrolet, lower the total payments by alleging a value less than the amount due under the contract. The result of such restructuring would be to reduce the total monthly payments required of the debtors

from the aggregate contract rates of $296.00 per month to the plan rate of $115.00 per month and the total aggregate payments from $4,795.00 to $2,125.00 plus 1% of the difference. (The difference is the projected allowed unsecured portion of the restructured contracts, to wit: $26.70).

■ Legislative history indicates that Chapter 13 of the Bankruptcy Reform Act was designed to carry forward the basic purpose of the former Chapter XIII, which

". . . has been to permit an individual to pay his debts and avoid bankruptcy by making periodic payments to a trustee . . . with the trustee fairly distributing the funds deposited to creditors until all debts have been paid . . ." *S.R.Rep. No. 989*, 95th Cong., 2d Sess. 12 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5798.

The debtors comply with the Code requirements of Chapter 13 in most respects. Their plan pays more than liquidation since all the property of the estate appears exemptable [11 U.S.C. § 1325(a)(4)]; the plan provides appropriately for secured claims [11 U.S.C. § 1325(a)(5)]; the plan complies otherwise with the Code [11 U.S.C. § 1325(a)(1)]; the debtors have paid their fees [11 U.S.C. § 1325(a)(2)]; and the debtors certainly have the ability to carry out the plan [11 U.S.C. § 1325(a)(6)].

The only question then remaining is whether the plan has been proposed in good faith [11 U.S.C. § 1325(a)(3)].

The proposed plan treats unsecured creditors and the allowed unsecured portion of the secured claims on a *de minimus* basis. The only reason *anything* is offered is so that they can comply with the provisions of 11 U.S.C. § 1325(a)(4) and qualify for Chapter 13 to rewrite their secured contracts under the provisions of 11 U.S.C. § 1322(a)(2).

■ This does not forward the basic purpose of Chapter 13 which is that an individual pay his debts in a reasonable fashion under a plan, which, in the debtor's circumstances, is fair to his creditors. Where a debtor can afford to pay reasonable amounts for a reasonable length of time but elects to make only token payments on his unsecured debts, the plan is unfair and should not be confirmed.

2. . . . "It is also necessary to prevent Chapter 13 plans from turning into mere offers of composition plans under which payments would equal only the non-exempt assets of the

It is precisely this abuse which Congress sought to avoid.[2] Congress has supplied the key to making certain that Chapter 13 plans will not unfairly treat creditors by including the requirement that such plans must be proposed in "good faith". [11 U.S.C. § 1325(a)(3)].

The plan proposed in the case at bar is not a fair and reasonable treatment of the debtors' unsecured creditors in that the payments extend for the relatively short period of 15 months, well within the debtors' financial ability to pay creditors, and is strictly for the purpose of rewriting secured contracts to the advantage of the debtor.

■ As was stated in the case of *In re Cosgrave*, 10 F.Supp. 672, 673 (S.D.Cal. 1935):

. . . "The question of good faith is one which the Court is obliged to consider —'good faith' means that the proceeding is brought by a person within the contemplation of the act, and under circumstances which warrant the assumption that some form of fair compromise may be worked out with the creditor interest."

Those words, albeit in a different context, still ring true. The meaning of "good faith" in this Court's opinion has not changed in the intervening 45 years.

■ If creditors claims are to be totally abrogated despite the debtors ability to pay Chapter 7 is the appropriate choice within the contemplation of the Bankruptcy Code. If such a debtor is to avoid bankruptcy and gain the benefits of Chapter 13, the *quid pro quo* is that he should pay according to his ability and circumstances, thereby providing fairly and responsibly for his creditors within the spirit of Chapter 13. That is what the "good faith" requirement demands. That element is one which the Court must consider on a case by case basis since the circumstances and abilities of each debtor will differ.

debtor." *S.R.Rep. No. 989*, 95th Cong., 2d Sess. 12–13 (1978), U.S.Code Cong. & Admin. News 1978, p. 5799.

The debtors' attorney argues that denial of confirmation presents the debtors with a harsh choice. That choice, as expressed, would be either to pay more under the Chapter 13 plan, or to choose to convert to a Chapter 7 liquidation without being able to restructure the secured contract obligations.

It should be pointed out that 11 U.S.C. § 722 allows a debtor to redeem his tangible personal property from a lien securing a dischargeable consumer debt. As the debtor cannot often pay cash to redeem such property, the recommendation of the *Report of the Commission on the Bankruptcy Laws of the United States* is that the debtor be allowed to enter into a binding agreement with the secured creditor for payment of the fair market value of such property so as to enable the parties to work out a gradual payment of the amount owed. [*Comm.Rep.*, H.R.Doc. No. 93137, Pt. I, 93d Cong. 1st Sess. 174, 180 (1973).] To the extent that result would obtain under 11 U.S.C. § 722 the choice of Chapter 7 is not a harsh one. To the extent that the choice to pay more than $150.00 per month and/or pay over a longer period of time than 15 months to comply with the good faith requirement of Chapter 13 is harsh, so be it.

Several bankruptcy judges who have considered Chapter 13 plans being proposed at the 1%, or nominal level have concluded that such plans were not contemplated by Congress when it enacted the new Code. [See *In re Beaver*, 2 B.R. 337 (S.D.Cal. 1980); *In re Burrell*, 2 B.R. 650 (N.D.Cal. 1980); and *In re Campbell*, 3 B.R. 57 (S.D.Cal.1980).] Each opinion is in accord that confirmation of such a plan under the circumstances of the cases presented would effectively do away with the necessity for the provisions of the Chapter 7 straight liquidation portion of the Code.

As stated by Judge Meyers in *In re Beaver, supra*

"It would be incredible if Congress, in enacting this comprehensive statutory scheme, had carefully guarded against the discharge of certain classes of debts in two chapters and placed a time bar on the use of Chapter 7, and yet would leave a loophole whereby these restrictions could be effectively torpedoed by a Chapter 13 plan paying a cent or two on the dollar. Surely these plans would be the equivalent of a straight bankruptcy case and must be confined to handling under Chapter 7. Certainly Congress never intended to allow any such abuse by granting *carte blanche* in the use of Chapter 13. Instead, it was anticipated that use of this Chapter would be restricted to those who propose legitimate plans and this intention is embodied in the requirement of good faith."

Any statute should be read in its entirety and all of its parts should be construed to be internally consistent so as to give meaning to all parts. *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1973). The "good faith" requirement when justly applied should accomplish this result, thereby reconciling Chapter 7 and Chapter 13.

In order to find that a plan is proposed in "good faith," the circumstances of each case and each plan must be examined, and if the good faith and other statutory requirements are met, the Court should confirm the plan. As Judge Meyers stated in *In re Beaver, supra,*

. . . "Thus, the standard in like instances under former practice was not reduced to a simple or mechanical formula. It allowed a broad inquiry into the facts of the case and demanded both a flexible and sensitive approach to protecting the interests at stake and the larger goals of the statute. This view also conforms with well settled principles of statutory construction.

In this we must always be mindful that the interpretation of a statute should not hinge on an isolated clause or phrase in a particular section, but should consider the whole statute as well as the objects and policy behind its enactment. *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, [2436,] 41 L.Ed.2d 374 (1973)."

The conclusion reached in the case at bar does not mean that, in a Chapter 13 plan proposed in good faith which fairly treats

creditors within the circumstances and means of the debtor, secured contracts cannot be rewritten or restructured as an incident to and to properly implement such a plan [See 11 U.S.C. § 1322(b)(2)]. Nor does this ruling mean that a debtor cannot propose to pay only a modest amount to creditors in an appropriate case. Denial of confirmation in the case at bar means simply that the facts and circumstances here presented fail to demonstrate to the satisfaction of this Court that this plan was proposed in good faith.

## CONCLUSION

Based on the foregoing, this Court concluded that the plan submitted by the debtors on November 27, 1979, did not qualify for confirmation and therefore, said plan was not confirmed.