## In re INTERNATIONAL PLASTICS, INC., Debtor.

## FRUEHAUF CORPORATION, Plaintiff,

v.

## INTERNATIONAL PLASTICS, INC. and Donald W. Bostwick, Trustee, Defendants.

Bankruptcy No. 80–10379.

Adv. No. 81–0611.

United States Bankruptcy Court, D. Kansas.

March 24, 1982.

---

E. Dwight Taylor, Wichita, Kan., for Fruehauf Corp.

Donald W. Bostwick, Wichita, Kan., trustee.

## MEMORANDUM AND ORDER SUSTAINING COMPLAINT IN RECLAMATION

ROBERT B. MORTON, Bankruptcy Judge.

### STATEMENT OF THE CASE

International Plastics, Inc. (hereafter IPI) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code [1] on March 18, 1980. The case was subsequently converted on April 27, 1981 to a liquidation proceeding under Chapter 7 of the Code.[2] Prior to IPI's initial filing under Chapter 11, Fruehauf Corporation, as lessor, and IPI, as lessee, entered into a "Fruehauf Corporation Investment Credit Lease" on January 25, 1977. Under the terms of the "lease", IPI acquired possession of a 1977 Fruehauf Van Trailer (Model No. FB8–F2–40) for an initial period of seventy-two months. IPI agreed to pay a total rental of $10,158.48, payable in seventy-two monthly installments of $141.09 each. IPI also assumed responsibility for obtaining required licenses, registrations, titles, permits and other certificates; and agreed to pay all taxes or fees, excluding net income taxes levied on lessor, and maintenance costs. Title to the vehicle was issued in the name of and retained by Fruehauf Corporation.

In the event of default by the lessee (occurrences constituting default are specified in the lease), the "lease" permits the lessor, at its option, to terminate the agreement and accelerate the unpaid rentals, and provides for re-lease or sale of the leased property. Lessee is to be credited with the net proceeds, after deducting the lessor's cost of selling or re-leasing, realized from a re-leasing for the unexpired portion of the initial term, or if the property is sold, with the net proceeds, less an amount equal to the value the property would have had when returned to lessor upon expiration of the lease. Upon the lease's termination, and payment of all rental due thereunder, lessee has the option to purchase any unit for its then fair market value as determined by lessor. No other purchase options are available to lessee.

Fruehauf seeks to reclaim possession of the instant trailer in accordance with the terms of the lease. The trustee contends he has priority to the trailer because the lease constitutes a disguised installment sale from Fruehauf to IPI and no financing statement was filed by Fruehauf covering the trailer. By order entered on September 16, 1981, the parties agreed that Fruehauf could repossess and sell the trailer at its present fair market value.[3] The proceeds were delivered to the trustee pending determination of the instant complaint.

### MEMORANDUM

Article 9 of the Uniform Commercial Code applies to any transaction that is intended to create a security interest in personal property or fixtures. Kan.Stat.Ann. § 84–9–102 (1980 Supp.) "Security interest" is defined by the Code as an "interest in personal property or fixtures which secured payment or performance of an obligation." Kan.Stat.Ann. § 84–1–201(37) (1980 Supp.) The issue in the instant case is whether the document executed by IPI and Fruehauf Corporation is a true lease or a secured installment sale disguised as a lease. If the transaction constitutes a secured installment sale, and thus, is subject to the provisions of Article 9 of the UCC, the *unperfected* security interest of Fruehauf is subordinate to the rights of the trustee in bankruptcy. Kan.Stat.Ann. § 84–9–301 (1980 Supp.).[4]

Kan.Stat.Ann. § 84–1–201(37) (1980 Supp.) provides some guidelines for determining whether a lease is intended as security:

---

1. 11 U.S.C. § 1101 *et seq.*

2. 11 U.S.C. § 701 *et seq.*

3. File Document 242.

4. Kan.Stat.Ann. § 84–9–301(1)(b) (1980 Supp.) provides that "an unperfected security interest is subordinate to the rights of . . . a person who becomes a lien creditor before the security interest is perfected." A trustee in bankruptcy is a lien creditor from the date the petition in bankruptcy is filed. *Id.* at § 84–9–301(3).

Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

The United States Court of Appeals for the Tenth Circuit, in considering an identical Oklahoma statute, concluded that the above language suggested a four-step approach under "the facts of each case" to determine whether a purported lease is in reality a secured transaction.

First, the presence of a purchase option does not automatically preclude a finding of true lease. Second, if a purchase option exists and it or other terms in the "lease" permit the "lessee" to become full owner by merely paying no or nominal consideration after complying with its terms, the inquiry ends. The "lease" is deemed a secured transaction as a matter of law and thus subject to the provisions of U.C.C. Article Nine.... Third, if the option does require greater than nominal consideration for full ownership, a true lease is usually found....

Finally, just as the inclusion in the "lease" of a purchase option does not of itself imply a secured installment sale, the exclusion of one does not automatically imply a true lease. Thus, even though nothing in the "lease" may permit purchase at nominal consideration, the "lease" will still be deemed one intended as security if the facts otherwise expose economic realities tending to confirm that a secured transfer of ownership is afoot.

*Steele v. Gebetsberger (In re Fashion Optical, Ltd.)*, 653 F.2d 1385 (10th Cir. 1981).

■ Other factors are also frequently considered by the courts. The following factors have been held indicative of a true lease: (1) the purchase price of the property at the end of the lease term is approximately equal to the market value; (2) rentals are intended to compensate the lessor for loss of value over the lease term due to aging or wear and tear; (3) rentals are reasonable and the purchase option price at the end of the lease term is not too low; (4) lessee is not acquiring an equity in the goods during the term of the lease. Factors indicative of a disguised secured transaction include: (1) lessee pays taxes, insurance, and bears risk of loss; (2) the lease contains default provisions governing acceleration and resale; (3) a substantial non-refundable deposit is required; (4) goods are to be selected from a third party by the lessee; (5) rental payments approximately equal the cost of the property plus interest; (6) the lessor lacks the facilities to store or retake the goods; (7) the lease is discounted with a bank; (8) warranties are disclaimed; (9) lessee pays sales tax incident to acquiring the property. *See University Bank v. Wentz Equipment Co. (In re Persons)*, No. 81–40439 (Bkrtcy.D.Kan., filed Jan. 12, 1982) and cases cited therein. Kansas has adopted many of these factors. *CIT Financial Servs. v. Gott*, 5 Kan.App.2d 224, 615 P.2d 774 (1980).

■ Under the terms of the instant lease, lessee had the option to purchase any unit at the expiration of the lease and upon payment of all rental and sums due thereunder.[5] Thus, the inquiry becomes whether the option requires from the lessee a greater than nominal consideration for full ownership of the rental property. Generally, the consideration is regarded as nominal and the transaction a disguised installment sale if the option price is less than twenty-five per cent of the original purchase price or such that the only sensible course of action for the lessee is to exercise the option. *See Percival Construction Co. v. Miller & Miller Auctioneers*, 532 F.2d 166 (10th Cir. 1976). Pursuant to the lease, IPI, in order to exercise its purchase option, must pay upon lease's expiration the then fair market value as determined by Fruehauf of

5. *See* Exhibit A to Complaint in Reclamation, paragraph 14.

the unit purchased. The parties' stipulation indicate that IPI could have purchased the instant trailer upon expiration of the lease for $4,950.00 or fifty-three per cent of its cash sale price on January 25, 1977, the date the lease was executed.[6] The court finds, therefore, that the consideration required to exercise the purchase option was greater than nominal.

■ Although nothing in the lease permits purchase for nominal consideration, the lease will nevertheless be deemed a disguised secured transaction if the economic realities of the transfer expose a secured transfer of ownership. *See, e.g., Steel v. Gebetsberger (In re Fashion Optical, Ltd.)*, 653 F.2d at 1389; *In re Tulsa Port Warehouse Co.*, 4 B.R. 801, 29 U.C.C.Rep.Serv. 1608 (Bkrtcy.N.D.Okl.1980); *In re Brookside Drug Store, Inc.*, 3 B.R. 120 (Bkrtcy.D. Conn.1980). A Texas bankruptcy court considered what it termed three tiers of analysis: (1) is there a definite obligation which may be secured or on the other hand may the lessee terminate at any time without further obligation; (2) may the lessee acquire the asset upon termination for no consideration or for a nominal consideration; (3) has the lessor effectively bargained away the absolute right to retake control and use the leased property? *In re Peacock*, 6 B.R. 922 (Bkrtcy.N.D.Tex.1980).

A definite obligation existed on the part of IPI under the instant lease to pay a total rental of $10,158.48 over a seventy-two month period, with no provision for an obligation-free termination by the lessee. As previously discussed, IPI could only acquire ownership of the property by payment of greater than nominal consideration at the lease's expiration. Thus, the third tier of analysis has been reached.

The court in *Peacock* identified three types of provisions pursuant to which the lessor relinquished the absolute right to possession and control. An agreement requiring mandatory disposition of the property and attributing the profit or loss to the lessee; an agreement containing an option to purchase which the parties would reasonably anticipate the lessee would exercise; or a lease extending for the useful life of the asset indicates a bargaining away of possession and control of the property by the lessor. *In re Peacock*, 6 B.R. at 925–27.

■ A lease extends for the useful life of the asset if the lessee is entitled to possess the leased property for a primary term and applicable renewal terms substantially corresponding to the estimated useful life of the property. 6 B.R. at 926. No evidence was presented as to whether the seventy-two month lease term was substantially equivalent to the useful life of the equipment and "[i]t would be improper to speculate as to its useful life." 6 B.R. at 927. Furthermore, the parties . have stipulated that the equipment would still have a value of $4,950 upon the lease's termination. Consequently, the court will not find that the lease extended for the useful life of the trailer.

There is no evidence that the instant purchase option was "reasonably anticipated."

A "reasonably anticipated" option is indicated where the option price is less than the fair market value. Such an option may also be found where the evidence establishes that the lessee would not have entered into the lease but for the purchase option, or where the lessee expresses an intent to exercise the option in unequivocal language or conduct. *In re Peacock*, 6 B.R. at 926. IPI could only exercise its purchase option by paying *fair market value* for the unit purchased and there is no indication of an expression by IPI in unequivocal language of its intent to exercise the option or that IPI would not have entered into the lease but for the purchase option.

The final inquiry under the three tier analysis, then, is whether, under the terms of the lease, the lessor is obligated to dispose of the property, and the lessee is entitled to any profit and bears any loss resulting from such disposition so that the lessee has the real interest in the final disposition

---

**6.** *See* File Document 248, Stipulation 3.

of the property. *See Bill Swad Leasing Co. v. Stikes (In re Tillery)*, 571 F.2d 1361 (5th Cir. 1978). In the *Peacock* case, the court considered an agreement that obligated the lessee to pay $33,672 over a sixty-month term for the lease of equipment, which the lessor had acquired for $20,884.50. In the event of default, the lessor was entitled to repossess the equipment, and recover from the lessee a sum equal to the total unpaid rental which would accrue for the balance of the rental term, less only the net proceeds of any reletting or sale. No option to purchase was granted the lessee in the lease. The court concluded that an affirmative first tier finding was of itself insufficient evidence of a lease intended as security and, the evidence having failed to affirmatively show that the lessor had bargained away the right to retake control and use the equipment, held, therefore, that the lease was a true lease.

Although containing a purchase option, the lease between Fruehauf and IPI is otherwise quite similar to the lease in the *Peacock* case. The lease *does not* require the lessor to dispose of the property upon the lease's natural termination. Indeed, IPI was obligated, should it decide not to purchase the unit, to return the property to Fruehauf at the conclusion of the initial rental term, unless the unit was retained on a month-to-month rental basis. Fruehauf then had the absolute right to possess and control the property at that time. In the event the lessee defaulted on the lease, Fruehauf had the right to terminate the agreement and accelerate the unpaid rentals; provided that Fruehauf promptly released or sold at public auction all units retaken. IPI was to receive a credit for the net proceeds realized from a re-leasing for the unexpired portion of the initial term or, if the unit was sold, with the net proceeds thereof, less an amount equal to the value the unit would have had when returned to lessor at the lease's expiration. The court concludes that the evidence does not affirmatively show that Fruehauf has bargained away the right to retake control and use the leased equipment. To the contrary, Fruehauf is under no obligation to dispose of the property at the natural termination of the lease and IPI is, therefore, afforded no equity in the property upon the lease's natural expiration.

The court determines that the instant agreement is a true lease and was not a lease intended as security. Although certain factors surrounding the instant transaction have been held to evidence a hidden security interest (lessee's liability as an insurer; lessee's duty to pay taxes; lessee's duty to acquire registrations, certificates, permits, etc.; and lessee's duty to maintain the equipment), such factors are less persuasive as they are essentially matters of contract negotiation. *See In re Peacock*, 6 B.R. at 926–27. Furthermore, certain other factors involved in the transaction are indicative of a true lease: the purchase price of the property at the end of the lease term is equal to its fair market value; rentals are reasonable and the purchase price not too low; no initial deposit is required from the lessee; there is no evidence that Fruehauf lacks adequate storage facilities to store the property when returned, nor that Fruehauf generally acts as a financing agency with the lessee selecting the goods from a third party.

In accordance with the above findings and conclusions, the court determines that Fruehauf's complaint in reclamation should be sustained.

### ORDER

Based upon the foregoing memorandum which constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 752 and Rule 52(a) Federal Rules of Civil Procedure

IT IS ORDERED that the trustee pay over to plaintiff, Fruehauf Corporation, the sale proceeds of the subject 1977 van trailer, which proceeds, by binding stipulation of the parties, stand in substitution for said vehicle.