In re Gerald E. HILDEBRAN and Iris O. Hildebran, dba Circle H Stables, Debtors.

Bankruptcy No. 685–07911.

United States Bankruptcy Court, D. Oregon.

Nov. 13, 1985.

Michael W. Doyle, Eugene, Or., for debtors.

Peter Pollaczek, Luoma, Kelley, Wolke, Mays & Pollaczek, Roseburg, Or., for Creditor.

## MEMORANDUM OPINION

POLLY S. WILHARDT, Bankruptcy Judge.

This case is before the court on the objections of a creditor, Gary E. Moore, D.D.S., P.C., Profit Sharing and Pension Plan (Moore) to the Chapter 13 plan of Gerald E. Hildebran and Iris O. Hildebran (Debtors). The facts as developed in oral argument are as follows:

Debtors sold some real estate to a third party which real estate included a horse stabling and training business. The third party intended to pursue the business located on the premises. To aid the third party purchaser, the debtors co-signed a one (1) year note at nineteen percent (19%) interest in Moore's favor. The note was secured only by the real estate sold. The debtors

received the funds from Moore as part of the purchase price. The third party failed to complete the purchase. The debtors paid interest only on the Moore note until 1981. In 1982, Moore refinanced the note and extended the due date to June 25, 1985. Although the debtors moved a mobile home onto the property in 1979, they did not live on the property until 1983. Since 1983, the property has been the debtors' principal residence.

The debtors filed a Chapter 13 bankruptcy petition on June 21, 1985, four (4) days before the Moore note matured. Under their amended plan, the debtors propose to modify the note to Moore to provide for the balance of the note to be amortized at fourteen percent (14%) over twenty-five (25) years, with monthly payments of $662.

Moore objects to the debtors' plan on the following grounds:

1. The note is secured only by real estate which is the debtors' principal residence. Thus, modification of the note terms is prohibited by 11 U.S.C. 1322(b)(2).

2. A debtor under chapter 13 may not modify a secured debt for a term longer than the length of the plan. Such term can only be three (3) years, or on showing of cause, five (5) years, pursuant to 11 U.S.C. 1322(c).

3. Conversion of a short term commercial loan into a long term residential loan is disruptive of commercial loan practices.

11 U.S.C. 1322(b)(2) provides:

Subject to subsections (a) and (c) of this section, the plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...

If Moore's note is secured by real property that is the debtors' residence within the meaning of 1322(b)(2) the debtors cannot modify the terms of the note as the plan so provides.

The legislative intent behind 1322(b)(2) was to provide stability in the long term residential housing market. Comment, *Curing Mortgage Defaults Under Chapter 13 of the Bankruptcy Code*, 1982 Ann.

Surv.Bankr.L., 493, 510 (1982). To determine whether the facts of this case support a finding that Moore is to receive the protection Congress intended for residential financing, this court must review the facts surrounding the execution of the original obligation.

At the time the debtors co-signed the first note they did not live on the real property being sold. On the contrary, the real estate consisted of land and improvements which had comprised their former business. The creditor was not providing residential financing to the debtors. The debtors were selling their business to a third party and received the funds from Moore as part of the purchase price. The debtors did not take up residence on the real property in question until long after the completion of the financing arrangement with Moore.

■ This court finds the real property which is security for the Moore obligation is not the debtors' principal residence within the meaning of 1322(b)(2).

The terms of § 1322(b)(2) authorize the debtors to modify the Moore note. But this court believes there are limits to that authorization placed on the debtors by another Code section. The subsections of 1322(b) are expressly subject to the language of 1322(c).

11 U.S.C. 1322(c) provides:

The plan may not *provide for* payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years. (emphasis added)

Congressional intent in imposing the five year limit under 11 U.S.C. 1322(c) was to avoid "making wage slaves" of the debtors. *5 Collier on Bankruptcy* ¶ 1322.01[4] (15th ed. 1979).

Extensions on plans, ... put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to involuntary servitude...H.R.Rep.No. 595, 95th Cong., 1st Sess. 117 (1977). *Reprinted in Collier on Bankruptcy, supra* ¶ 1322.01[4].

■ Although the debtors' plan is for a *term* of five (5) years, it *provides for* payments over a period of twenty-five (25) years. This period is clearly longer than the statutory five (5) year limit imposed by 1322(c). This court finds that the proposed modification of the Moore note violates the provisions of Section 1322(c).

■ This court is aware that one section of the Code, 1322(b)(5), authorizes, under certain circumstances, payments to a creditor extending beyond the plan term.

1322(b)(5) provides:

... the plan may, notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments ... on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due.

This court believes, however, that this subsection does not permit modification of a pre-petition short term obligation into an obligation extending beyond the plan term. Rather, 1322(b)(5) contemplates allowing a Chapter 13 plan to cure a default which had occurred on a pre-petition long term obligation and then to maintain regular payments on the same obligation as part of the plan even though the payments might, by the original terms of the note, continue beyond the life of the plan. H.R.Rep.No. 595, 95th Cong., 1st Sess. 429 (1977), *reprinted in* 1977 U.S.Code Cong. & Ad. News 5787, 6384.

This court's interpretation that § 1322(c) prohibits providing for these payments beyond the plan term is reinforced by the provisions of § 1328(a).

Section 1328(a) states:

after completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge of all debts provided for by the plan ... except any debt—

(1) provided for under Section 1322(b)(5) of this title; or

(2) of the kind specified in Section 523(a)(5) of this title.

Section 1328(a) creates a mechanism which allows the debtor a discharge when his obligations under the plan are completed. It further specifically recognizes that where another Code provision allows for payments on a debt to be made beyond the plan term the discharge on that debt will not be granted. If Congress had intended to allow for a plan to provide for payments beyond the plan term other than those authorized by § 1322(b)(5), logically it would have provided another exception to the general discharge rule under § 1328(a). Not to so provide would lead to the illogical and unjust result of granting the debtor a discharge on a debt prior to his completing his court ordered plan obligations.

This court must deny confirmation of the plan as presently structured as it does not comply with the provisions of 11 U.S.C. § 1322(c).

This Memorandum Opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated.

An order consistent herewith will be entered.