**In the Matter of Patricia SMITH, Debtor.**

**Bankruptcy No. 85–06758.**

United States Bankruptcy Court, D. New Jersey.

March 20, 1986.

David Paul Daniels, Camden, N.J., for debtor.

Peter J. Broege, Red Bank, N.J., for Robert M. Wood, Standing Chapter 13 trustee.

Michael S. Ackerman, Zucker, Goldberg, Becker & Ackerman, Maplewood, N.J., for Mortg. Bankers Ass'n.

Edward Casel, Willingboro, N.J., Dona C. Bass, Wayne, N.J., for amicus curiae.

## OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

In this matter the debtor, Patricia Smith, seeks confirmation of her Chapter 13 plan. She proposes to cure the default on the first mortgage on her principal residence by the payment of the sum of $14,000 as the secured default amount and the allowance of additional claimed arrears, including attorneys fees and costs in the amount of $10,000 as an allowed unsecured claim. That claim, together with other unsecured creditors who may prove their claims, are to be paid at 10% of their claims over a 60–month period.

The residence is worth $60,000, and the principal balance due on the mortgage is approximately $54,000.00.

The parties agree that, in view of the debtor's limited income, the extension of the plan to 60 months and a dividend of 10% is appropriate under the circumstances. The only issue before the Court is whether or not the claim of the mortgage company may be modified or "crammed down" pursuant to the provisions of 11 U.S.C. § 1322.

Submissions have been made by various interested parties in this and other similar cases and have been designated by the Court as *amicus curiae* in order to permit consideration of their submissions.

The theory upon which the debtor proceeds rests is section 506 of the Bankruptcy Code, (11 U.S.C. § 506(a) *et. seq.*). Simply stated, this section divides a secured claim into two parts. The portion which is

secured is designated an allowed secured claim and is limited to the value of the security. The balance of the claim becomes an allowed unsecured claim. In the instant case, the creditor would receive 100% of the allowed secured claim, but only 10% of the unsecured portion.

The debtor further relies on the principles set forth in 11 U.S.C. § 1322(b)(5), which permits the debtor in the plan to modify any secured claim. The debtor urges that the exception set forth in 11 U.S.C. § 1322(b)(2), omitting the debtor's principal residence is inapplicable.

As a matter of law, the debtor relies on a number of cases. *In re Everett*, 48 B.R. 618 (Bkrtcy.E.D.Pa.1985) is inapposite. Although cited by debtor, it appears that that case does not refer to the principal residence of the debtor, and no facts in the case permit the inference that it does. *See also In re Johnson*, No. 81-2440, slip. op. (Bkrtcy.D.N.J.1981).

Debtor further relies upon an unreported decision titled *In the Matter of Michael Garcia and Linda Garcia*, No. 82-03939, slip. op. (Bkrtcy.D.N.J.1983). That case, normally referred to as *In re Cappadonna*, was decided by the Honorable Richard W. Hill in this Court. The general language used by Judge Hill in that opinion required that a general construction of section 1322 be interpreted broadly to permit the debtor to deaccelerate a mortgage as the basic right which gave meaning to the principles Congress intended in enacting Chapter 13. slip. op. 20. A careful reading of the case suggests, however, that there are limitations to the doctrine. slip. op., 21

In *In re Cosby*, 33 B.R. 947 (Bkrtcy.E.D. Pa.1983), and 33 B.R. 949 (Bkrtcy.E.D.Pa. 1983), the Honorable Emil F. Goldhaber dealt with two aspects of the same case. In the earlier case, Judge Goldhaber ruled that a second mortgage was unsecured when there was no equity remaining. In the second case, a claim for attorneys fees and costs of suit as part of the first mortgage was allowed. 33 B.R. 949. In the instant case, the section 1322(b)(2) issue does not arise with respect to a second

mortgage but rather a first mortgage. Thus, while the principles may appear similar, the case must be distinguished. *In re Tanner*, 14 B.R. 933 (Bkrtcy.W.D.Pa.1981), and *In re Bracken*, 35 B.R. 84 (Bkrtcy.E.D. Pa.1983), deal with Chapter 7 cases and hence are not applicable. In this District, three cases determined by the Honorable William Lipkin in Camden permit the avoidance of a second mortgage and in each of those cases, the lien of the second mortgage was permitted to be avoided. *See In re Moreland*, No. 81-02083, slip. op. (Bkrtcy.D.N.J.1981); *In re Shambry*, No. 81-04188, slip. op. (Bkrtcy.D.N.J.1982) and *In re Neal*, No. 81-01346, slip op. (Bkrtcy. D.N.J.1981).

In *In re Spadel*, 28 B.R. 537 (Bkrtcy.E. D.Pa.1983), Judge Goldhaber made an analysis similar to that urged by the debtor in the instant case. He was there dealing with a third mortgage. Once the section 506(a) test was applied, the undersecured third mortgagee only had an allowed unsecured claim. The plan could modify the unsecured claim because, the court reasoned, the mortgagee was not the holder of a secured claim. The lien was not avoided, but the Chapter 13 plan could pay it as an unsecured claim.

This reasoning leaves section 1322(b)(2) without any *raison d'etre.* "Cramdown" presupposes that a secured creditor will retain its lien and that its rights will be modified if it is undersecured. If the claim is no longer secured under section 506(a), and section 1322(b)(2) does not apply, the exception for debtor's principal residence is unnecessary. A statute should not be interpreted so as to leave it with no meaning whatsoever. *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *In re Tom Carter Enterprises*, 49 B.R. 243 (Bkrtcy.C.D.Cal. 1985).

It therefore becomes necessary to determine what is permitted under the provisions of section 1322. Essentially, the courts have held that in Chapter 13, section 1322(b)(5) permits the curing of defaults and the return to monthly payments in spite of a pre-bankruptcy acceleration by a

mortgagee. *In re Taddeo*, 685 F.2d 24 (2d Cir.1982). In recent cases, the courts have limited the time period within which defaults may be cured and an acceleration deaccelerated. *See Matter of Tynan*, 773 F.2d 177 (7th Cir.1985). Modification is permitted in the instant case, however, and such modification can accomplish a great deal to preserve the position of the debtor. *In re Carr*, 32 B.R. 343 (Bkrtcy.E.D.Va. 1981); *In re Lum*, 1 B.R. 186 (E.D.Tenn. 1979); *In re Simpkins*, 16 B.R. 956 (Bkrtcy.E.D.Tenn.1982).

Having set forth the general rules, it is necessary to consider the specific matters before the Court in this case. The statute is clear:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principle residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims. (*emphasis added*).

11 U.S.C. § 1322

The statute further states:

(5) Notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time, and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5)

We must therefore go to statutory interpretation. Statutory interpretation is a somewhat tortured, but extremely vital process. The basic law applicable in situations where a statute creates a conflict (as exists here between sections 506 and 1322) is the premise that the specific overrides the general. Specifically, Judge Hanson in *In the Matter of Brown*, 329 F.Supp. 422 (S.D.Iowa 1971) stated:

Statute should receive a sensible construction, such as will effectuate the legislative intention, and, if possible avoid an absurd or unreasonable result ... (*ci-*

*tations omitted*) ... In construing a statute, it is necessary to give effect to all its provisions if possible, and different portions of the act will not be held to be repugnant if they can be reconciled ... (*citations omitted*) ... However inclusive may be the general language of the statute, it will not be held to apply or prevail over matters specifically dealt with in another part of the same enactment. (*citations omitted*)

329 F.Supp. 425.

*See also Maiatico v. U.S.*, 302 F.2d 880 (D.C.1962); *Inter-Continental Promotions, Inc. v. McDonald*, 367 F.2d 293 (5th Cir.1966) *cert. den.*, 393 U.S. 834, 89 S.Ct. 105, 21 L.Ed.2d 104, *appeal after remand*, 441 F.2d 1356, *cert. den.*, 404 U.S. 850, 92 S.Ct. 85, 30 L.Ed.2d 89, *reh. den.* 404 U.S. 961, 92 S.Ct. 307, 30 L.Ed.2d 279.

In *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 52 S.Ct. 322, 76 L.Ed. 704 (1932), Justice Butler summed up the general rule stating:

General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment ... (*citations omitted*) ... Specific terms prevail over the general in the same or another statute which otherwise might be controlling. (*citations omitted*)

285 U.S. 208, 52 S.Ct. 323.

In *In re Anderson*, 3 B.R. 160 (Bkrtcy.S. D.Cal.1980), the court stated:

This Court does not agree that the proper sole purpose of a Chapter 13 is to rewrite a debtor's contract with secured creditors. To the extent that a Chapter 13 plan rewrites a secured creditor's contract, *incidental* to the carrying out of a plan, some alteration of contractual obligations is permissible.

3 B.R. 162.

The case requires that the statute be read in its entirety and all of its parts should be construed so that they are internally consistent. 3 B.R. 164. More recently, the Bankruptcy Court in Oregon was faced with a problem similar to the one in the instant matter in *In re Hildebran*, 54

B.R. 585 (Bkrtcy.D.Ore.1985). The court there held that the term "principal residence" should be interpreted to mean principal residence. 54 B.R. 586.

It is also necessary to examine the legislative history with respect to these sections of the Code. In Senate Report No. 95–989, accompanying the Bankruptcy Reform Act of 1978, the Committee Report out of the Judiciary states "[s]ubsection (b) permits a Chapter 13 plan ... to modify the rights of holders of secured and unsecured claim except claims wholly secured by real estate mortgages." S.Rep. No. 989, 95th Cong., 2d Sess. 141, *reprinted in* 1978 *U.S. Code Cong. & Ad.News* 5787, 5927. While that statement appears to go farther than the statutory language, the original Senate version (S.2266) certainly showed an intent to avoid modification of real estate mortgages. The House version (H.R. 8200) omitted all reference to real estate and the final Bill limited the language to the debtor's principal residence. *See also* statements by Congressman Don Edwards, 1978 *U.S. Code Cong. & Ad.News* at 6481 and Senator Dennis DeConcini, 1978 *U.S. Code Cong. & Ad.News* at 6550. In similar language they described the final version as a compromise agreement which particularly protected real estate mortgages on the debtor's principle residence. The purpose of such a limitation is set out in *In re Hildebran, supra,* where Judge Wilhardt stated:

> "The legislative intent behind § 1322(b)(2) was to provide stability in the long term residential housing market." (citation omitted)

54 B.R. 586.

█ The Court finds that the principle of statutory interpretation which must be applied to the within case relies on the principle that section 1322(b)(2) is specific as opposed to section 506(a) and section 1322(b)(5) which are general. Further, the latter sections may not be used to cramdown a first mortgage on the debtor's principle residence as requested by the debtor herein.

The various statutes, furthermore, are easily reconciled. Section 1322(b)(2) permits the modification of rights as against section 506(a). On the other hand, section 1322(b)(5) does not deal with the modification of rights, but rather with the curing of a default and a deacceleration thereof.

The Court therefore denies confirmation for the reasons expressed herein. The Court orders that the debtor has fourteen days to file an amended plan or convert to Chapter 7.

In the event the debtor determines to file a notice of appeal, the Court will grant a stay of all orders on the condition that the debtor maintain all trustee payments and post-confirmation mortgage payments outside the plan.

The trustee shall submit an order consistent with this Opinion.