In re Austin D. POTENZA, Debtor.

Bankruptcy No. BK–S–85–0424.

United States Bankruptcy Court,
D. Nevada.

Feb. 27, 1987.

Lionel Sawyer & Collins, Las Vegas, Nev., for debtor.

R. Paul Sorenson, Las Vegas, Nev., for movants.

Jolley, Urga, Wirth & Woodbury, Las Vegas, Nev., for trustee.

## MEMORANDUM DECISION

ROBERT CLIVE JONES, Chief Judge.

On April 1, 1985, the Debtor, Austin D. Potenza, filed a petition under Chapter 7 of the Bankruptcy Code. Debtor filed his Chapter 7 statements and schedules shortly thereafter. On November 19, 1986 Debtor filed an application to convert the case to Chapter 13. Debtor's Chapter 13 statement was filed on November 25, 1986. Two creditors and the Chapter 7 trustee have objected to the conversion of the case on the ground that the Debtor's unsecured obligations exceed $100,000 in violation of 11 U.S.C. section 109(e).[1] That section provides that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,-000 and noncontingent, liquidated, secured debts of less than $350,000 ... may be a debtor under Chapter 13 of this Title." For the following reasons, this Court finds that Debtor's noncontingent, liquidated, unsecured debts exceed the $100,000 threshold of section 109(e). Thus, Debtor is ineligible for Chapter 13 relief.

## THE REAL ESTATE MORTGAGES

Movants point out that Debtor's schedule lists, as a secured debt, an obligation to Robert Rich in the amount of $137,981.41, secured by a third mortgage on certain real property of the debtor. Ac-

---

1. Creditors Beria and Vinnik moved the court to dismiss the Chapter 13 proceedings or alternatively, for valuation hearings pursuant to sec-tion 506(c). Bunker, the Chapter 7 trustee, moved the court for an order vacating the conversion to Chapter 13.

cording to the schedules, the amount of the first and second mortgages on the property total $144,158.37. Debtor values the property at $195,000. Movants urge this Court to adopt the test contained in 11 U.S.C. section 506(a) to ascertain the character of debts for purposes of determining Chapter 13 eligibility under section 109(e).

> Section 506(a) provides in relevant part: An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

Under this analysis, Mr. Rich is secured only to the extent of the value of his collateral, and has an unsecured claim for the balance. Since the first two mortgages total $144,158.37, and the debtor values the property at $195,000.00, Mr. Rich's $137,981.47 mortgage is unsecured in the amount of $87,139.84.

This Court finds that it is appropriate to make such a valuation in determining the amount of unsecured claims against the estate for purposes of section 109(e). "Courts have consistently examined the true value of collateral securing a debt when evaluating a debtor's eligibility for Chapter 13 relief under 11 U.S.C. section 109(e)." *In re Day,* 747 F.2d 405, 406 (7th Cir.1984). The *Day* court affirmed the district court's finding that a section 506(a) valuation is appropriate when determining eligibility under section 109(e). In *Day,* a $73,000 obligation appeared on debtor's schedules and statements as secured. The property securing the obligation, however, did not exist and the collateral was valueless. The court applied section 506(a), and deemed the $73,000 debt to be unsecured. When added to the already acknowledged $65,000 unsecured debt, the debtor's unsecured obligations exceeded $100,000.

Thus, the debtor was not eligible for relief under Chapter 13.

In *In re Bobroff,* 32 B.R. 933 (Bankr.E.D.Pa.1983), the court converted a proceeding under Chapter 13 to one under Chapter 7 for failure to meet the eligibility requirements of section 109(e). Debtor owned real estate worth $125,000. Three perfected security interests in the amounts of $58,600, $197,327, and $12,300 encumbered the property. No unsecured debts were scheduled. Nevertheless, the court, applying section 506(a), concluded that because the three "secured" loans totalling $268,227 were secured by collateral worth only $125,000, the debtor actually had unsecured debts in excess of $100,000. *See also In re Koehler,* 62 B.R. 70 (Bankr.D.Neb.1986); *In re Ballard,* 4 B.R. 271 (Bankr.E.D.Va.1980).

Debtor cites *In re Morton,* 43 B.R. 215 (Bankr.E.D.N.Y.1984) for the proposition that a section 506(a) valuation is not appropriate in the context of an eligibility analysis under section 109(e). The *Morton* court noted that "[t]he focus of section 109(e) is of [sic] *debts* existing at the time of filing while the focus of section 506(a) is of [sic] *claims* existing and *allowed* well beyond the filing date." 43 B.R. at 220. Reasoning that since Congress did not intend that a determination of Chapter 13 eligibility be delayed until the case has substantially progressed, the court held that a section 506(a) valuation in this context is inappropriate.[2] Notwithstanding *Morton,* this Court will follow the weight of authority that a court must examine the true value of collateral securing a debt when determining eligibility under section 109(e).

Debtor also argues that a section 506(a) valuation is inappropriate since an undersecured debt may, at a later point in time, become secured. The focus, however, of section 109(e) is, by its terms, on the debtor's obligations *at the time of the filing of*

---

**2.** *Morton,* which seems to stand alone on this issue, may have been at least implicitly rejected by the same court in *In re Gorman,* 58 B.R. 372, 374 (Bankr.E.D.N.Y.1986). *Gorman* involved a Chapter 13 eligibility determination under section 109(e). The court indicated in dicta that a section 506(a) valuation would have been appropriate, had either party sought a determination by the court as to the secured status of the debt in question.

*the petition.  See also In re Pearson,* 773 F.2d 751, 756 (6th Cir.1985).

Debtor further relies on *In re Smith,* 63 B.R. 15 (Bankr.D.N.J.1986) for the proposition that even if section 506 were otherwise applicable to section 109(e), it is not applicable to an undersecured mortgage on the debtor's principal residence.  Debtor's reliance, however, is misplaced.  *Smith* did not involve a section 109(e) eligibility determination.  Rather, the issue in *Smith* was whether section 1322(b)(5), which permits a debtor in a Chapter 13 plan to modify any secured claim, could, in light of section 1322(b)(2), which excepts from modification claims secured only by the debtor's principal residence, be used by the debtor to modify the mortgage on debtor's residence.  Holding that section 1322(b)(5) could not be so used, the *Smith* court found that a section 506(a) valuation was not necessary in this context.  Clearly, *Smith* is not applicable to the instant case.

Adopting the section 506(a) analysis, this Court finds that as of the date of the petition, Debtor owed $87,139.84 in unsecured debt to Mr. Rich, although Debtor lists this obligation as secured.

## THE 1985 IRS OBLIGATION

The Debtor's Schedule A–1 lists priority unsecured tax obligations to the IRS of $50,072 as "taxes for tax year to 3/31/85 (personal)." [3]  Although the form used by the Debtor provided a column in which Debtor could have indicated that this claim was contingent, unliquidated or disputed, the Debtor did not do so.

Although none of the movants suggested that the Court include this particular obligation in its section 109(e) calculation, the Court raised this issue at the hearing.  In response to the Court's inquiry regarding this obligation, Debtor's counsel indicated that Debtor, a medical doctor, normally paid estimated taxes on a quarterly basis.  Debtor's counsel further stated that had Debtor, in this instance, divided the tax year, the $50,072 figure would reflect the amount owing for the first quarter of 1985.  Debtor's counsel did not know whether the Debtor's accountant had actually filed a division of the tax year.

■ Debtor's counsel also stated that as of April 1, 1985 (the date the Chapter 7 petition was filed) no taxes were liquidated and owing.  I disagree.  As noted, Debtor did not list the $50,072 obligation as unliquidated.  Moreover, this obligation clearly fits within the definition of "liquidated".  In *In re Sylvester,* 19 B.R. 671, 673 (Bankr. 9th Cir.1982) the court stated that the meaning of the word "liquidated" that is consistent with the Bankruptcy Code is "whether the amount due is capable of ascertainment by reference to an agreement or by simple computation." *Id.* (quoting *In re Bay Point Corp.,* 1 B.C.D. 1635 (D.N.J.1975)).  The IRS's claim is certainly liquidated under *Sylvester.*  The fact that this obligation was included in Debtor's schedule in the exact amount of $50,072, further indicates that it was liquidated.

■ Nor does Debtor's schedule indicate that this obligation was disputed or contingent.  Even if the Debtor did dispute this obligation in liability or amount, it would still be included in the section 109(e) eligibility computation.  The court in *Sylvester* held that a dispute regarding liability or amount does not render a debt unliquidated.  Accordingly, a disputed debt must be included in the 109(e) eligibility calculation. *Id.* 19 B.R. at 673.

## CONCLUSION

On the date of the filing of the petition, Debtor owed the IRS $50,072 in noncontingent, liquidated, unsecured debt.  When

---

**3.** The Debtor's schedule A–1 also provides that "[t]he IRS is conducting audits of a limited partnership in which the debtor was a limited partner.  Results are not yet complete."  When the case was converted to a Chapter 13, the Debtor filed a Chapter 13 Statement.  The new Statement reflects that the audit had been completed, and that Debtor owed a total of $77,486 to the IRS for 1974 and 1975 taxes and interest to April, 1985.  The schedule provides that these taxes were unliquidated until 1986.  At the hearings the issue of whether these obligations could be included in the section 109(e) calculation was raised.  In light of the present disposition, however, the Court concludes that it need not address the issue at this time.

added to the unsecured obligation to Mr. Rich in the amount of $87,139.84, Debtor clearly exceeds the section 109(e) $100,000 threshold. Furthermore, Debtor's schedule lists noncontingent, liquidated, unsecured debts to Debtor's accountant in the amount of $7,556.00 and to the Nevada State Industrial Insurance System, for the first quarter of 1985, in the amount of $223.00. Thus, Debtor's unsecured obligations total at least $144,990.84 in violation of section 109(e). Clearly then, debtor is ineligible for Chapter 13 relief.

IT IS SO ORDERED.