In re: Charles Lester BURGAT, O.D., and Linda Loree Burgat, fdba Pearle Vision Centers, Debtors.

Bankruptcy No. 86 B 5226E.

United States Bankruptcy Court, D. Colorado.

Dec. 30, 1986.

Melissa McCue, Denver, Colo., for debtors.

John F. McBride, Holme Roberts & Owen, Denver, Colo., for Pearle Vision Center, Inc.

### ORDER OF DISMISSAL

CHARLES E. MATHESON, Bankruptcy Judge.

The Debtors herein filed a Chapter 13 case. In response to the petition Pearle

Vision Center, Inc. ("Pearle") filed a motion to dismiss asserting that the Debtors do not qualify to file a Chapter 13 case within the provisions of 11 U.S.C. § 109(e). In particular, Pearle asserts that the Debtors owe unsecured, noncontingent, liquidated debts in excess of $100,000.00. Pearle's conclusion, in this regard, is drawn from the fact that it has an unsecured claim against the Debtors in the amount of $91,-983.98, and the Debtors schedules show additional liquidated noncontingent claims of more than $9,000.00.

The Debtors assert that the claim of Pearle arises out of a franchise agreement entered into between the Debtors and Pearle. The Debtors dispute Pearle's claim and, therefore, assert that Pearle's claim is not "liquidated" and should not be counted for purposes of determining eligibility under 11 U.S.C. § 109(e).

The issue of whether disputed debts should be counted in determining the threshhold eligibility base for Chapter 13 purposes has been frequently decided, including a decision in this district. The majority view is that disputed debts are properly includable in determining the total amount of outstanding liquidated, noncontingent, unsecured debts. *In re Blehm*, 33 B.R. 678 (Bankr.D.Colo.1983); *In re Sylvester*, 19 B.R. 671 (9th Cir.Ap.1982); *In re Williams*, 51 B.R. 249 (Bankr.S.D.Ind. 1984); *In re Crescenzi*, 53 B.R. 374 (Bankr. S.D.N.Y.1985).

An examination of the Code demonstrates support for the majority view. A "debt" is defined to mean a "liability on a claim." 11 U.S.C. § 101(11). A "claim" is defined very broadly as a "right to payment" regardless of whether the right is "liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(4). Thus, in defining a "claim," Congress has clearly distinguished between "liquidated" claims and "disputed" claims.

Congress has demonstrated as well, in other sections of the Bankruptcy Code, an ability to expressly deal with and define "disputed" claims when that is pertinent to the determination. In particular, in 11 U.S.C. § 303(b) Congress, in 1984, amended the statute to make it clear that creditors holding claims against a debtor would qualify for the purpose of filing an involuntary petition unless those claims are the subject of a "bona fide dispute." No such limitations are included with respect to Section 109(e).

The Court has considered the decision in the case of *In re Lambert*, 43 B.R. 913 (Bankr.D.Utah 1984) which sets forth the minority view. That decision starts by focusing on the fact that in Section 109(e) Congress has referred to "debts" instead of "claims." However, the court there acknowledges that in certain contexts in the Code the terms "debt" and "claim" are synonymous, the two terms simply referring to a single obligation as seen from the point of view of the debtor and the creditor, respectively—a debtor has "debts," and a creditor has "claims." As noted above, under the Code a "debt" is defined as a "claim". 11 U.S.C. § 101(11). Nevertheless, the court in *Lambert* concludes that, for purposes of Section 109, "debt" should have a different meaning, one that is restricted to an actual legal obligation to pay.

The court in *Lambert* relied in part upon the decision of *In re Covey*, 650 F.2d 877 (7th Cir.1981). The *Covey* decision focused on the language of Section 303(b)(1) of the Bankruptcy Code as it existed prior to the 1984 amendments, and on the question of whether disputed debts were "contingent" or "noncontingent" for the purpose of determining the eligibility of a petitioning creditor in an involuntary case. Congress, as observed above, has now amended Section 303(b)(1) and made a conscious choice to exclude debts which are subject to a bona fide dispute. The fact that no such conscious choice was made by Congress with respect to Section 109(e) is strong evidence that the majority view is correct.

Having considered both the majority and the minority view, as set forth in the cases above referred to, this Court concludes that neither view is totally correct. As has

been observed, in defining "claim," the Code refers to a *"right* to payment." 11 U.S.C. § 101(4). Similarly, "debt" is a "liability" on a claim. 11 U.S.C. § 101(11). Thus, there is a recognition that in evaluating the debtor's outstanding obligations, the creditor must have at least a threshold *"right* to payment". Similarly, the debtor must have a *"liability"* on the claim. 11 U.S.C. § 101(11). In this context it is possible, and perhaps proper, to distinguish between claims which have no valid underlying legal basis and those which were valid in their inception but which are subject to offset or counterclaim.

This type of distinction was alluded to in the *Lambert* case, *supra,* 43 B.R. at 921, and is further demonstrated in the Uniform Commercial Code as in effect in the State of Colorado, in the provisions pertaining to commercial paper and the rights of a holder in due course. The U.C.C. recognizes that a holder in due course has the absolute right to enforce a negotiable instrument against the maker, with certain exceptions. Those exceptions are:

(a) Infancy, to the extent that it is a defense to a simple contract; and

(b) Such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

(c) Such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

(d) Discharge in insolvency proceedings; and

(e) Any other discharge of which the holder has notice when he takes the instrument. C.R.S., 1973. § 4–3–305.

In this section, the Uniform Commercial Code recognizes that there are certain real defenses which go to the question of whether there was ever an initial underlying obligation; i.e., the existence of a defense that the instrument was signed under duress, or that the signature on the document was obtained in some manner such that the signor was not aware of what he was signing. Defenses of that character

go to the essential question of whether the holder of the note as a creditor has a legal *"right* to payment."

The distinction acknowledged in the Uniform Commercial Code can also be framed under the rules applicable to pleading practices. The Federal Rules of Civil Procedure distinguish between a denial of an allegation, an affirmative defense, and a counterclaim. A denial is simple to understand. If a complaint alleges a claim premised on a promissory note or a contract and it is the defendant's position that he did not sign the contract or that the signature was obtained under duress or by trick, the defendant can deny any liability on the instrument. On the other hand, if the defendant entered into the agreement but asserts that he should not be liable because there was a lack of consideration, or the plaintiff had made fraudulent misrepresentations, or that payment had been made, or asserts other defenses constituting a "confession and avoidance," those matters are set forth, not by way of denial, but by way of affirmative defense. F.R.Civ.P. 8(c). Counterclaims, of course, are separately stated. F.R.Civ.P. 13.

In the present case, the defenses raised by the Debtors to the claims of Pearle are all in the nature of affirmative defenses. While the Debtors assert claims of fraud, those are claims in the nature of fraudulent inducement as opposed to fraud in the execution of the underlying franchise agreement or the promissory notes. Thus, it is not necessary in this case for the Court to reach the ultimate question of whether, for the purposes of 11 U.S.C. § 109(e), all disputed claims must be considered regardless of the nature of the dispute. It is sufficient for the Court to conclude here that the majority view is correct as it applies to disputes of the nature raised and asserted by these Debtors and to hold that debtors who have accumulated unsecured debts in excess of $100,000.00 may not enjoy the more pervasive benefits of Chapter 13 by the expediency of asserting defenses against certain of the claims which are in the nature of affirmative defenses to the

claims, or by raising counterclaims against the claimant.

 The Debtors here argue that, notwithstanding the dispute, Pearle's claims are not "liquidated" in any event. The claim of Pearle arises under the franchise agreement. The claim is premised, in part, on promissory notes signed by the Debtors at the time that they acquired their franchise from Pearle. Additional amounts are claimed to be due by reason of inventory shipped to the Debtors, the charges for which are set forth on separate invoices. The Debtors assert that it is extremely difficult for the Debtors to calculate the exact amount of the debt because of the number of invoices and their complexity. Thus, the Debtors argue that the account is, in fact, unliquidated.

The fact that the Debtors may have defenses or counterclaims against Pearle's claim does not affect the claim's character as being liquidated. *In re Thomas*, 211 F.Supp. 187 (D.Colo.1962), aff'd, 327 F.2d 667 (10th Cir.1964), cert. denied 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 36 (1964). As the Court stated in the *Sylvester* case, *supra*, 19 B.R. at 673:

> Dow Jones' claim was readily ascertainable in at least three ways: first, from the underlying contract coupled with knowledge of the orders placed; second, from the invoices; and third, from the cumulative monthly billings, which the court found to be an account stated. We conclude that the claim was liquidated on the date of bankrutpcy even though disputed.

Similarly, in the present case, the claim, while complex, is ascertainable. The terms of the promissory notes and the underlying franchise agreement are explicit. The billings for the merchandise delivered are included. While it may take some effort to add up and verify the figures, it appears that the claim can nonetheless be determined by the terms of the agreements and from the invoices and, thus, Pearle's claim is liquidated in this sense.

 When the Debtors defaulted under the terms of their franchise, Pearle took possession of the property and foreclosed on certain of the assets. The Debtors assert that Pearle's actions in disposing of the collateral "are confusing." Again, disputes centered on the sufficiency of the underlying foreclosure sale do not serve to make the liquidated claim unliquidated. *In re Williams, supra*, 51 B.R. at 251.

Having considered the Debtors arguments and the claims asserted, the Court concludes that the claim of Pearle Vision Center, Inc. is a liquidated claim which must be included in determining whether these Debtors have or owe noncontingent, liquidated, unsecured debts in excess of $100,000.00. With the Pearle debt included, it is clear that these Debtors have total noncontingent, liquidated, unsecured debts in excess of $100,000.00 and, therefore, do not qualify to file a petition under Chapter 13. 11 U.S.C. § 109(e). Accordingly, and based on the foregoing,

IT IS HEREBY ORDERED, that the Motion to Dismiss of Pearle Vision Center, Inc. is hereby granted, and the Debtors' petition under Chapter 13 of the Bankruptcy Code is hereby dismissed.