**In re Virgil R. PULLIAM, Debtor.**

**Bankruptcy No. 386–31981–SAF–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

June 21, 1988.

**242**

Philip Palmer, Elizabeth Bates, Dallas, Tex., for debtor.

Van Oliver, Dallas, Tex., for Colwell Financial Corp.

## ORDER

STEVEN A. FELSENTHAL,
Bankruptcy Judge.

On March 22, 1988, and May 10, 1988, the court held hearings on a motion to dismiss filed by Colwell Financial Corporation, Colwell Mortgage Corporation, Ben Milam Savings Association, and Mercury Savings Association ("Colwell"). Colwell subsequently filed a motion to convert this case to a case under Chapter 7 of the Bankruptcy Code. Colwell contends that the debtor Virgil Pulliam ("Pulliam") is not eligible to be a debtor under Chapter 13 of the Bankruptcy Code because at the time he filed his Chapter 13 petition, he owed more than $100,000 in noncontingent, liquidated unsecured debts. Colwell and Pulliam were represented by counsel at the hearings. The court now concludes that Colwell's motion to dismiss/convert must be granted. Pulliam will be given an opportunity to decide whether he wants this case dismissed or converted to another chapter of the Code. This memorandum opinion and order contains the court's findings of fact and conclusions of law required by Bankruptcy Rules 7052 and 9014.

## Facts

Colwell provided the financing for 484 condominium units. In 1984 Pulliam executed 484 guaranty contracts in which he agreed to guarantee repayment of the approximately $19,000,000 in promissory notes. The borrowers defaulted on April 17, 1986, and Pulliam filed his Chapter 13 petition on June 11, 1986. Pulliam contends that he did not know that the borrowers had defaulted until he received a letter dated July 14, 1986, from Colwell's attorneys. In November 1986 Colwell foreclosed on its security interests. In December 1986 Colwell filed a proof of claim in which it states that Pulliam is liable to them "in an amount as yet undetermined." In its December 16, 1986, motion to dismiss, Colwell contends that Pulliam owes it approximately $9,000,000. On April 6, 1987, Colwell filed an amended proof of claim for $10,689,392.50.

Colwell contends that Pulliam's unsecured debts exceeded the $100,000 limit contained in 11 U.S.C. § 109(e) at the time Pulliam filed his petition because Pulliam's obligations under the guaranty agreements were fully matured, noncontingent, and liquidated on that date. Pulliam contends that he is entitled to be a Chapter 13 debtor because Colwell's claims were contingent and unliquidated at the time he filed his petition. He contends that the claims were contingent because Colwell had not demanded payment from him before he filed his petition. He contends that the claims were contingent because Colwell had not demanded payment from him before he

filed his petition. He also alleges that Colwell's claims should not be counted because he listed these claims as "disputed." According to Pulliam, he listed these claims as disputed because his guarantees were obtained "through fraud, misrepresentations, coercion, and duress" and because the collateral securing Colwell's notes were worth more than the indebtedness. Finally, Pulliam contends that the claims were unliquidated because they are disputed and because Colwell characterized its claims as undetermined in its proof of claim.

### DISCUSSION:

An individual may not be a debtor under Chapter 13 if his noncontingent, liquidated unsecured debts exceed $100,000 on the date he filed his petition. 11 U.S.C. § 109(e); *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 754 (6th Cir.1985). This debt limitation must be satisfied only on the date the petition is filed. *Brockenbrough v. Commissioner, I.R.S.*, 61 B.R. 685, 687 (W.D. Va.1986); *In re Kutner*, 3 B.R. 422, 424 (Bankr.N.D.Tex.1980), *appeal dismissed on other grounds*, 656 F.2d 1107 (5th Cir. 1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982); 2 *Collier on Bankruptcy* § 109.05 at 109–15 (15th ed. 1987). The general rule developed by the courts and commentators is that an individual may have an unlimited amount of contingent and unliquidated debts and still be entitled to be a debtor under Chapter 13 if his noncontingent, unliquidated debts do not exceed the § 109(e) limitations. *See In re Crescenzi*, 53 B.R. 374, 376 (Bankr.S.D. N.Y.1985), *aff'd*, 69 B.R. 64 (S.D.N.Y.1986). Recently, the Fifth Circuit has stated that the § 109 limitations are not jurisdictional. *Promenade National Bank v. Phillips (In re Phillips)*, 844 F.2d 230, 235–36 n. 2 (5th Cir.1988).

### A. Contingent Debts.

A debt is contingent if the debtor's liability depends upon an extrinsic event. *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir.1987); *In re Kelsey*, 6 B.R. 114, 118 (Bankr.S.D.Tex.1980). Pulliam's debt to Colwell is based on a guaranty agreement. Under Texas law, a guaranty is a collateral undertaking in which the guarantor agrees to pay an obligation if the principal obligor defaults. The guarantor incurs a secondary liability; his liability arises only after the principal obligor fails to perform. *United States v. Vahlco Corp.*, 800 F.2d 462, 465 (5th Cir.1986); Conner, *Enforcing Commercial Guaranties in Texas: Vanishing Limitations, Remaining Questions*, 12 Tex.Tech.L.Rev. 785, 788 (1981). A guaranty contract may establish either a "guaranty of payment" or a "guaranty of collection." *Vahlco*, 800 F.2d at 466. A guaranty of payment, which is also known as an absolute guaranty, requires the guarantor to pay immediately upon the principal obligor's default. The guarantor's liability attaches upon the primary obligor's default even if the guarantor is not given notice of the default. *United States v. Little Joe Trawlers, Inc.*, 776 F.2d 1249, 1253 (5th Cir.1985). "[The] demand [for payment] serves solely as a request for payment as opposed to the creation of liability." *In re Wilson*, 9 B.R. 723, 725 (Bankr.E.D.N.Y.1981). An absolute guaranty ceases to be contingent upon the principal obligor's default. *Id.* at 725; *Dekalb Bank v. Flaherty (In re Flaherty)*, 10 B.R. 118, 119 (Bankr.N.D.Ill.1981).

A guaranty of collection, which is also known as a conditional guaranty, enables the creditor to seek payment from the guarantor only after the occurrence of some condition "such as the condition that the creditor has unsuccessfully and with reasonable diligence sought to collect the debt from the principal debtor." 800 F.2d at 446. A conditional guarantor is entitled to notice of the primary obligor's default before he is obligated to pay. *Little Joe Trawlers*, 776 F.2d at 1253. Because guaranty agreements are contracts, a guarantor's rights and responsibilities are governed by the terms of the particular guaranty agreement. *Little Joe Trawlers*, 776 F.2d at 1254.

The parties did not present the guaranty agreements at the March 22 hearing. Pursuant to this court's request, the parties submitted one of the guaranty agreements which they stipulate is identical to the re-

maining guaranty agreements. This document shows that the guaranties were absolute and unconditional. Although the agreement provided that Pulliam did not have to cure a default until 5 days after he received notice from Colwell, this notice serves merely as a request for payment and is not a prerequisite to Pulliam's liability. Pulliam's liability arose immediately upon the primary obligors' defaults. Thus, the guaranties were not contingent.

### B. Liquidated Debts.

■ A debt is liquidated if the amount due and the date on which it was due are fixed or certain, or when they are ascertainable by reference to (1) an agreement or (2) to a simple mathematical formula. *Flaherty*, 10 B.R. at 120; *In re Potenza*, 75 B.R. 17, 19 (Bankr.D.Nev.1987). Colwell's claims were liquidated because they were ascertainable from the guaranty contracts and the promissory notes. Colwell's claims were not unliquidated merely because Colwell stated its claims were undetermined in their proof of claim. It is the character of the debt and not whether the particular calculations were actually performed that determines whether a debt is liquidated. Pulliam's debt to Colwell was liquidated at the time he filed his petition.

### C. Disputed Debts.

■ The general rule is that disputed debts should be included in the § 109(e) debt calculations. *In re Hutchens*, 69 B.R. 806, 811 (Bankr.E.D.Tenn.1987); *In re Crescenzi*, 69 B.R. 64, 65–66 (S.D.N.Y. 1986); *Craig Corp. v. Albano (In re Albano)*, 55 B.R. 363, 368 (N.D.Ill.), *aff'd*, 767 F.2d 924 (7th Cir.1985); *Vaughan v. Central Bank of the South*, 36 B.R. 935, 938–39 (N.D.Ala.), *aff'd*, 741 F.2d 1383 (11th Cir.1984); *In re Labig*, 74 B.R. 507, 510 (Bankr.S.D.Ohio 1987) (Chapter 12); *In re Williams*, 51 B.R. 249, 251 (Bankr.S.D.Ind. 1984); *In re Blehm*, 33 B.R. 678, 679 (Bankr.D.Colo.1983); *In re McMonagle*, 30 B.R. 899, 903 (Bankr.D.S.D.1983); *In re Troyer*, 24 B.R. 727, 730–31 (Bankr.N.D. Ohio 1982); *In re DeBrunner*, 22 B.R. 36, 37 (Bankr.D.Nev.1982). By its own terms, § 109(e) excludes only contingent and un-

liquidated debts. A claim is not contingent even if it is subject to a bona fide dispute. *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd*, 696 F.2d 193 (5th Cir.1981); *Semel v. Dill (In re Dill)*, 731 F.2d 629, 631 (9th Cir.1984). Some courts, however, have held that a claim is not liquidated if it is subject to a substantial good faith dispute regarding liability or amount. *In re Lambert*, 43 B.R. 913, 915 (Bankr.D.Utah 1984); *In re King*, 9 B.R. 376, 378–79 (Bankr.D.Or. 1981).

The Code defines a debt as a "liability on a claim." 11 U.S.C. § 101(11); *In re Michaelsen*, 74 B.R. 245, 248 (Bankr.D.Nev. 1987). Because the Code uses the terms "liquidated," "contingent," and "disputed" in its definition of the term "claim," several courts have concluded that Congress intended for these three terms to have different meanings. They conclude that because Congress excluded only contingent and unliquidated debts from the § 109(e) debt limits, disputed debts which are noncontingent and liquidated must be counted. *Sylvester v. Dow Jones and Company (In re Sylvester)*, 19 B.R. 671, 672–73 (Bankr. 9th Cir. 1982); *In re Crescenzi*, 53 B.R. at 379. The *Lambert* court, however, found that Congress's failure to use the term disputed in § 109(e) was inconclusive because the three terms overlap and are intertwined. 43 B.R. at 920. Initially, the court reasoned that although the Code generally uses the terms claim and debt as synonyms, Congress made a conscious choice when it used the term debt in § 109(e) because it did not want a debtor's eligibility for Chapter 13 relief "to be predicated upon the mere demands of creditors." *Id.* at 919. According to the *Lambert* court, Congress intended the term debt in § 109(e) to refer to an actual legal obligation to pay. *Id.* The *Lambert* court then reasoned that even though Congress expressly excluded only contingent and unliquidated debts, Congress's failure to expressly exclude disputed debts is not probative because § 109(e) contains no reference to disputed or undisputed debts. The *Lambert* court concluded that a debt is unliquidated if it is subject to a substantial good

faith dispute because the court defined a liquidated debt as a debt that is certain as to amount and liability. *Id.* at 921. The court concluded that if there is a substantial good faith dispute as to the debtor's liability, the debt is unliquidated to the extent it is disputed. *Id.* The *King* court applied a similar analysis. 9 B.R. at 378–79.

The court in *In re Burgat,* 68 B.R. 408 (Bankr.D.Colo.1986), applied a hybrid analysis. The court drew a distinction between debts "which have no underlying legal basis" and debts "which were valid in their inception but which are subject to offset or counterclaim." 68 B.R. at 410. The court reasoned that although good faith disputes as to affirmative defenses and counterclaims do not make a debt unliquidated, a debt is unliquidated if the debtor raises a substantial good faith dispute as to whether the creditor has a legal right to payment. That is, a debt is unliquidated if the debtor raises a bona fide denial to the legality of the debt. The court reached this conclusion by reasoning that since the Code defines a "claim" as a "right to payment" and a "debt" is defined as a "liability on a claim," the creditor must have a "right to payment." The court found that if the debtor raises a good faith dispute as to the underlying legal basis of the creditor's claim, the debt must be excluded because the creditor may not have a "right to payment." *Id.* at 409–10. This court disagrees with both analyses.

The *Lambert* and *Burgat* analyses are based on erroneous definitions of the terms "claim" and "debt." Congress intended for the terms claim and debt to be coextensive. *Energy Cooperative, Inc. v. SOCAP International, Ltd. (In re Energy Cooperative, Inc.),* 832 F.2d 997, 1001 (7th Cir.1987). " '[A] creditor has a "claim" against the debtor; the debtor owes a "debt" to the creditor.' " *Id.* "The differences in these [two] terms are [merely] ones of point of view: 'debt' concerns itself with the *debtor's* obligation; 'claim' concerns itself with the *creditor's* right." *New York Credit Adjustment Bureau, Inc. v. Just In–Materials Designs, Ltd. (In re Vasu Fabrics, Inc.),* 39 B.R. 513, 516 (Bankr.S.D.N.Y.

1984) (emphasis in original). Congress could have stated that an individual may not be a debtor under Chapter 13 if he has creditors who have noncontingent, liquidated unsecured claims in excess of $100,-000. For stylistic purposes, however, Congress used the term "debt" in § 109(e) since it was addressing the debtor's eligibility. Similarly, in defining who may be a petitioning creditor under § 303(b), Congress used the term claim since it was addressing the rights of the creditors. No significance should be given to Congress's use of the term "debt" instead of the term "claim" in § 109(e).

The Supreme Court has noted that Congress intended for the term claim to be used in its broadest sense. *Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 707–08, 83 L.Ed.2d 649 (1985). Congress intended for all claims against the debtor, whether remote, contingent, or unliquidated, to be dealt with in the bankruptcy case. *In re Amfesco Industries, Inc.,* 81 B.R. 777, 783 (Bankr.E.D.N.Y.1988). A claim exists under federal bankruptcy law if "there is reasonable likelihood that there will occur within a reasonable time in the future those elements necessary to constitute a cause of action." *Id.* at 781. The *Burgat* court erred by focusing on the words "right to payment" to limit the term claim and, thus, limit the term debt. "[A]" 'right to payment' under the definition of 'claim' includes obligations which are neither matured, nor liquidated, nor fixed." *Id.* at 782. Congress intended for the term debt to be given the same broad meaning given to the term claim. *Energy Cooperative,* 832 F.2d at 1001.

The Code states that a creditor has a claim if he has a right to payment even if this right to payment is "liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, [and] undisputed." 11 U.S.C. § 101(4). When Congress wanted to limit this broad definition of a claim, it did so by modifying the term with these adjectives. *See* 11 U.S.C. §§ 303(b), 502(c)(1), 702(a)(1). As the Supreme Court in *Kovacs* stated "Congress desired a broad definition of a 'claim' and knew how to limit the

application ... when it desired to do so." 469 U.S. at 279, 105 S.Ct. at 708. Likewise, Congress intended for the term debt to be defined broadly and knew how to limit this broad definition when it wanted to do so as it did in § 109(e) by adding adjectives found in § 101(4). Because Congress did not insert the term disputed in § 109(e), disputed debts must be counted in determining whether a petitioner may be a debtor under Chapter 13.

■ The *Lambert* court also incorrectly concluded that a good faith dispute makes a debt unliquidated. "Liquidation ... refers to certainty as to the money value of the [debt]." *Albano,* 55 B.R. at 367. It is the character of the debt and not of any defense that determines whether a debt is liquidated. The existence of a dispute over part or all of a debt does not convert the debt from a liquidated one to an unliquidated one. C. McCormick, *Damages* § 54 (1935).

■ The Fifth Circuit has recognized that debts based on tort and quantum meruit claims are generally unliquidated until resolved by judicial decree or otherwise because the plaintiff's damages are not fixed. *Denham v. Shellman Grain Elevator, Inc.,* 444 F.2d 1376, 1380 (5th Cir.1971). As the *Sylvester* court noted, however, contract debts are usually liquidated even though disputed. 19 B.R. at 673. A guaranty is a type of contract that is inherently liquidated when it is used to guarantee a promissory note because the amount owed can be determined from the promissory note and supporting documents. The debt owed by the primary obligors to Colwell, which is based on a promissory note, is liquidated because the debt can be determined from the promissory note and loan records. Accordingly, the guarantees are liquidated because they are based on the primary obligors' liability. The fact that Pulliam disputes his liability is inconsequential.

Because Pulliam's noncontingent, liquidated unsecured debts exceeded $100,000 on the date he filed his Chapter 13 petition, he may not be a debtor under Chapter 13. Upon the foregoing,

IT IS ORDERED that the motion to convert is GRANTED. Because debtor has a right to dismiss or convert under § 1307, Virgil Pulliam has 10 days from the date this order is entered to inform the court whether he wants this case dismissed or converted to another chapter of the Code. If Pulliam does not file a timely response, the court will convert this case to Chapter 7.