**In re Stephen F. CLARK and Lori B. Clark, Debtors.**

**Bankruptcy No. 87–B–14668–M.**

United States Bankruptcy Court, D. Colorado.

Oct. 14, 1988.

Thomas O. Murphy, Longmont, Colo., for debtors.

K. Preston Oade, Golden, Colo., for Alpine Associates, Inc.

Sally Zeman, Denver, Colo., Chapter 13 Trustee's Office.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtor's Motion to Confirm their Chapter 13 Plan and Alpine Associates, Inc.'s ("Creditor" or "Alpine") Objection to confirmation. Hearings were held on June 17 and August 17, 1988.

The Court took under advisement the threshold issue raised by the objecting Creditor as to whether or not these Debt-ors qualify as Chapter 13 Debtors pursuant to 11 U.S.C. § 109(e). The Creditor maintains that the Debtors' noncontingent, liquidated, unsecured debts exceed $100,000.00 and the Debtors thus do not qualify as Chapter 13 debtors pursuant to Section 109(e) of the Bankruptcy Code. This Opinion addresses that issue.[1]

## BACKGROUND AND FINDINGS OF FACT RELEVANT TO 11 U.S.C. § 109(e)

1. Debtors filed their Petition for relief pursuant to Chapter 13 on December 3, 1987.

2. Debtors initially scheduled *unsecured* debt of $83,618.00 at the "Summary of Debts and Property" on their bankruptcy Schedules. Debtors also concurrently scheduled total *unsecured* debt of $93,-618.00 at "Paragraph 12(c) Unsecured Debts," which list of debt included a $10,-000.00 entry for a debt owing to the Bank of Boulder ("Bank") with a notation "Mortgage (Return Condo)." Additional amended Schedules and Statements were subsequently filed by the Debtors which included inconsistent and confusing entries for the amount of unsecured debt and the amount of the Bank's claim.[2]

3. Debtors also identified as an asset on the original December 3, 1987 Schedules, a condominium located at 635 Walnut in Boulder, Colorado and a debt owing to the Bank in the amount of $82,784.00 secured by the condominium valued at $82,785.00. A notation appears: "(Condo Return)."

4. On June 9, 1988, Stephen Clark conveyed to the Bank, by Warranty Deed and estoppel agreement, the condominium unit he owned at 635 Walnut, Unit 4, Boulder,

---

**1.** At the termination of the August 17, 1988 hearing the Court made oral findings of fact and rendered conclusions of law on all other issues raised. More specifically, those issues were: (a) whether or not the Debtors' Plan was confirmable pursuant to Section 1325, (b) whether or not the Debtors' Plan was filed in good faith ((a)(3)), (c) whether the Plan was feasible ((a)(6)), and (d) whether or not the Debtors were devoting all their "disposable income" to the Plan (Section 1325(b)). The oral findings and conclusions were reduced to a written memorandum of September 15, 1988.

**2.** A "First Amended Summary of Debts" and "Paragraph 12(c)" filed thereafter on March 29, 1988, reported unsecured debt totalling $83,-904.00. This amendment included a debt to the Bank of Boulder for $785.00 with the notation "Mortgage (Return Condo)." A "Second Amended Summary of Debts" and "Paragraph 12(c)" was filed July 28, 1988 indicating unsecured debt of $57,341.00 with no debt scheduled as owing to the Bank of Boulder. (The obligation to Bank of Boulder is in addition to a modest signature loan obligation from Debtors to Bank of Boulder over which there is no dispute.)

Colorado. The transaction was acknowledged to be a Deed in Lieu of Foreclosure and the property was accepted by the Bank in full and final satisfaction of its claim against Stephen Clark.

5. Alpine and the Debtors have engaged in extended, costly, and bitter litigation pursuant to the allegations of Alpine that Stephen Clark, when serving as an employee or independent sales representative for Alpine, deceived and damaged Alpine. Alpine maintains that as a result of Stephen Clark's dishonesty, evidenced by a series of sales effected by Stephen Clark for Alpine's business competitor Royal Supply Company, Inc. while he was still working for Alpine, Alpine lost substantial sales opportunities and profits. Alpine claims lost sales and profits of perhaps $333,-831.00 as damages, but the pre-petition state court litigation pertaining to that claim and the amount of the claim has not been resolved or concluded, as of this time.[3] Debtors scheduled Alpine as a creditor with a $1.00 claim, and indicated the consideration or basis of the claim was "lawsuit."

6. Stephen Clark has admitted to "deceiving" Alpine. Stephen Clark has not, however, conceded that Alpine's claim, if any, would not be dischargeable pursuant to 11 U.S.C. § 523 or a bar to discharge pursuant to 11 U.S.C. § 727 if this were a Chapter 7 case. Alpine maintains the claim would be non-dischargeable or a bar to discharge in Chapter 7.

7. Travelers Insurance Company ("Travelers") paid to Alpine, by check dated July 2, 1987, the sum of $22,500.00 "in full settlement [of] Clark Fidelity claim" pursuant to an insurance policy which insures against "fraudulent or dishonest acts of employees ... ." Travelers also filed a $22,500.00 Proof of Claim in this case on June 2, 1988. Debtors did not originally list, and have not yet listed, Travelers as a creditor.

8. The parties stipulated to the accuracy and the introduction of Alpine's Exhibit 6, which was an itemized list of Debtors' creditors and "actual debt" as of December 3, 1987, except that Debtor disputed certain claims as follows: (a) Bank of Boulder mortgage of $10,291.45, (b) City of Boulder, Treasurer of Real Estate tax on condominium of $688.90), (c) City of Boulder claim of $477.00, and (d) 1984 Honda Accord debt. Exhibit 6 indicates Debtors' total debt at time of filing the Petition was $105,722.43, *not including* Alpine's or Travelers' claims. After deducting the contested claims, Exhibit 6 reflects "actual debt" *admitted* by the Debtors of $91,-364.08.

## OPINION AND DISCUSSION

The issue before the Court is whether or not the Debtors' unsecured debt as of the date of filing the Petition exceeded $100,-000.00 in noncontingent, liquidated claims. If the answer is yes, Debtors cannot qualify under the filed Petition for relief pursuant to Chapter 13. If the answer is no, then the Debtors do qualify and they may file an Amended Plan in accordance with this Court's prior Findings of Fact and Conclusions of Law.

The answer to the question will be determined by the nature, amount, and classification of the two principal disputed claims, those of (1) the Bank of Boulder and (2) the Travelers Insurance Company.

### 1. *Bank of Boulder Claim*

With regard to the Bank of Boulder claim, Debtors maintain, first, that because the Bank accepted its collateral on June 9, 1988 in full and final satisfaction of its claim, no claim can be counted against the Debtors as of December 3, 1987, the date of filing. Debtors argue, second, that there was no deficiency claim as of December 3, 1988 which is, in part, demonstrated by the Bank's subsequent acceptance of the Deed in Lieu of Foreclosure.

As a matter of law and as a matter of logic and fairness, calculation of bona fide deficiency claims of undersecured creditors

---

**3.** Jurisdiction, standing, and other preliminary and procedural questions dogged the progress of the state litigation between Alpine, the Debt-ors, and Royal Supply Company, which litigation was finally stayed by the Debtors' bankruptcy.

is appropriate in determining total unsecured debt of a Chapter 13 debtor.

■ Pursuant to 11 U.S.C. § 506(a),[4] a creditor with a claim secured by a lien on property has a secured claim only to the extent of the value of the property and an unsecured claim for the balance, or for the amount of the claim which exceeds the value of the property. This Court will follow the majority of courts on this issue and apply Section 506(a) in calculating the amount of secured and unsecured debt held by a Chapter 13 debtor. *Matter of Day*, 747 F.2d 405, 406 (7th Cir.1984); *Matter of Martin*, 78 B.R. 928 (Bankr.S.D.Iowa 1987); *In re Potenza*, 75 B.R. 17, 18 (Bankr.D. Nev.1987).

Courts have consistently examined the true value of collateral securing a debt when evaluating a debtor's eligibility for Chapter 13 relief under 11 U.S.C. section 109(e). *In re Day*, 747 F.2d 405, 406 (7th Cir.1984). The Day Court affirmed the district court's finding that a section 506(a) valuation is appropriate when determining eligibility under section 109(e). *In re Potenza, supra* at 18.

I reject the ruling, as well as the logic and consequences, of those courts which hold that the entire debt listed as secured by a debtor shall be considered secured debt irrespective of the amount or value of collateral securing the claim. *See, In re Morton*, 43 B.R. 215 (Bankr.E.D.N.Y.1984); *In re King*, 9 B.R. 376 (Bankr.D.Or.1981). To rely exclusively on Debtors' characterization of the debt as secured, only, and ignore the realities of collateral value and undersecured claims is to disregard the Code language and its intent. The potential consequences of treating truly undersecured claims as fully secured claims allows for distortion, misuse, and abuse of Chapter 13. *See, Matter of Day, supra* at 407.

■ The application of Section 506(a) and determination of unsecured and secured portions of debt is to be established as of the date of filing the Petition in bankruptcy. *In re Potenza, supra* at 18; *See, Matter of Pearson*, 773 F.2d 751, 757 (6th Cir.1985).

■ Under this holding, the Debtors in this case must recognize the Bank of Boulder claim, as of the time the Debtors filed their Petition, including the Bank's deficiency, if any. Debtors argue there was no deficiency. On the contrary, all evidence produced at trial and the Debtors' initial sworn Schedules reflect a deficiency of approximately $10,000.00. Debtors' original Schedules list a $10,000.00 unsecured Bank claim, which Schedules presumably were accurate and reliable when signed and filed by Debtors, and reflect a recognition of a deficiency claim. Exhibit 6 reflects a $10,-291.45 deficiency claim. Two offers to purchase the condominium in the winter of 1987 were evidently made for $75,000.00 (Reynolds) and for $68,000.00 (DeLuca). Appraisals conducted for the Bank valued the property at $75,000.00 and $81,000.00. As testified to by a Bank officer, as of December 3, 1987, the amount of the Bank's claim was $85,291.45 and there existed an expected $10,000.00 deficiency claim of the Bank.

The post-petition transfer of the collateral to the Bank by a Deed in Lieu, which was accepted by the Bank in full and final satisfaction of its claim, does not retroactively extinguish the Bank's deficiency claim as of the date the Petition was filed.

Thus, this Court finds that as of December 3, 1987, there was an unsecured claim of the Bank in the amount of $10,000.00 which amount is to be added to the sum of debt admitted by the Debtors and reflected in Exhibit 6. This results in total unse-

---

4. "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S. C. § 506(a).

cured debt of $101,364.08. This amount exceeds the $100,000.00 limit set forth in Section 109(e) and Debtors are thus disqualified as Chapter 13 Debtors by virtue of the Bank's claim.

### 2. *Travelers Insurance Company Claim*

■ With regard to the second disputed claim, that of Travelers for $22,500.00, the Debtors argue that it is not to be included in the Section 109(e) calculation. Debtors rely on an assertion that the Travelers' claim, as subrogee of Alpine under the fidelity policy, is only as good and enforceable, as that of Alpine's claim, and as such, it is contingent and unliquidated. Alpine, however, argues the Travelers' $22,500.00 claim should be included, and relies primarily on the reasoning and decision in *In re Furey,* 31 B.R. 495 (Bankr.E.D.Pa.1983).

In *Furey,* the debtor had *admitted* misappropriating funds of his employer and the employer's insurance company paid $217,073.65 to the employer under a fidelity policy. The insurer filed a proof of claim for $228,178.65 against the debtor. The Court in *Furey* focused on the question of whether or not the claim was "liquidated" as required in Section 109(e). It found that the debtor had *admitted* misappropriation of funds, the insurance payment had undisputedly been made, the payment amount was readily ascertainable and, consequently, the debt was "liquidated," thus satisfying the requirement of Section 109(e).

The pivotal question in *Furey* was whether or not the insurer's claim qualifies as "liquidated" or not. The term "liquidated" is not defined in the Code, but, generally a debt is deemed liquidated if "... the amount due is capable of ascertainment by reference to an agreement or by simple computation." *In re Potenza,* supra at 19; *In re Sylvester,* 19 B.R. 671, 673 (Bankr. 9th Cir.1982); *Matter of Pearson, supra* at 754.

Two cases in this District are instructive in deciding the issue of what is a *liquidated* debt, as well as what is a *contingent*

debt. *In re Burgat,* 68 B.R. 408 (Bankr.D. Colo.1986). *In re Blehm,* 33 B.R. 678 (Bankr.D.Colo.1983).

In *Blehm* and *Burgat,* each Court rejected the view that a *disputed* debt is unliquidated and thus must be excluded from Section 109(e) calculations. The Courts, instead, adopted the generally accepted notions that a "debt" is (a) essentially synonymous with a "claim" and (b) a claim qualifies as *liquidated,* if it is readily calculable or ascertainable as to amount, and (c) a debtor's dispute, defenses or counterclaims, do not affect the character and classification of a claim as being *liquidated. Blehm, supra* at 679; *Burgat, supra* at 411; *In re Sylvester, supra* at 673; *See, In re Thomas,* 211 F.Supp. 187, 192 (D.Colo.1962), *aff'd,* 327 F.2d 667 (10th Cir. 1964).

Here, the *amount* of Travelers' claim, $22,500.00, is clear, precise and not subject to bona fide dispute. It is liquidated.

■ As to the element of whether or not a debt is *contingent,* in *Blehm,* the Court concluded that a claim in the nature of a tort, which was disputed by a debtor and not judicially fixed as to liability or amount, may be properly and fairly classified as a contingent claim. It was held that a claim which arises "... *only* upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor ...," as contemplated by the debtor and creditor, may be deemed *contingent* and thus not included in the $100,000.00 unsecured claim limit (emphasis added). *Blehm* at 680, citing *In re All Media Properties, Inc.,* 5 B.R. 126 (Bankr.S.D.Tex.1980). Tort claims such as fraud, piercing the corporate veil, or quantum meruit, which were disputed and where proof as to liability and damages is *still* to be produced, were likened to and deemed contingent in nature.[5]

In *Burgat,* the Court adhered to the rule that disputed claims are, generally, to be included in Section 109(e) calculations. It indicated, in dicta, however, that a debt will

---

5. Tort claims as contrasted to contract, promissory note or similar claims. *In re Blehm, supra*

at 680.

be deemed contingent and not included for Section 109(e) purposes if it is disputed and the creditor cannot demonstrate at least "... a threshold 'right to payment'" and the debtor's "'liability on the claim.'" *Burgat, supra* at 410. A claim without a "... valid underlying legal basis ...," as distinguished from one which is merely subject to offset or counterclaim, might well not be included in calculating the $100,000.00 unsecured debt limit.

In the instant case, the record reveals uncontroverted evidence that (a) Stephen Clark admitted to "deceiving" Alpine, (b) Travelers paid $22,500.00 to Alpine under its fidelity policy, and (c) sales by Stephen Clark for Alpine declined significantly during the period of time prior to his resignation from Alpine, the same period of time he is alleged to have been surreptitiously selling for Alpine's competitor, Royal Supply Company. Stephen Clark denies culpable conduct which might except a debt from discharge or bar a discharge under Chapter 7. He also denies liability to Alpine, as well as to Travelers, on their respective claims. Mr. Clark has not, however, filed an objection to Travelers' claim. Moreover, the grounds on which he denies liability on the claims are in the nature of counterclaims, affirmative defenses, setoff, or mitigating circumstances.

Absent a full trial on the merits, which might demonstrate the claim is not allowable, this Court is persuaded the Travelers' claim is supported by not insubstantial evidence.[6] The quantum of evidence thus far produced by Alpine demonstrates that the Travelers claim appears bona fide and that Travelers has, at least, a threshold right to payment. It may indeed be subject to counterclaims, setoff, affirmative defenses, or mitigating circumstances, all of which could perhaps be proved at a trial, but that does not obviate the basic claim or negate the fundamental right to payment on the claim.[7]

This Court finds that as of December 3, 1987, there was an unsecured claim of Travelers in the amount of $22,500.00. When added to the admitted amount of debt reflected on Exhibit 6 and the Bank debt, it results in total unsecured debt of $123,864.08. The Debtors are thus disqualified as Chapter 13 Debtors by virtue of the Travelers' claim.

## CONCLUSION

IT IS ORDERED AND ADJUDGED, for the reasons set forth above, that the Debtors do not qualify as Chapter 13 Debtors pursuant to Section 109(e) and consequently their petition pursuant to 11 U.S.C. § 1301 *et seq.* is hereby DISMISSED.

---

**6.** It is not intended, nor is it necessary or desirable, that the Court hold full evidentiary hearings on disputed claims at the forefront of a Chapter 13 case and prior to confirmation.

**7.** Travelers and Alpine's claims may each also be dischargeable in Chapter 7, but that is a different matter and one to be determined only at the proper time in the proper adversary proceeding.