**In re Raymond M. HUELBIG, Shawnn M. Huelbig, Debtors.**

No. C.A. 03–474S.

United States District Court, D. Rhode Island.

Aug. 30, 2004.

Matthew J. McGowan, Esq., Salter, McGowan, Sylvia & Leonard, Providence, RI, for Appellants.

Richard D. King, Jr., Esq., Smith & Brink, Quincy, MA, for Appellee.

## DECISION AND ORDER

SMITH, District Judge.

Debtors Raymond M. Huelbig and Shawnn M. Huelbig ("Debtors") appeal an order of the Bankruptcy Court dated October 1, 2003, dismissing Debtors' Chapter 13 petition. *In re Raymond M. Huelbig,* 299 B.R. 721 (Bankr.D.R.I.2003). The issue before the Court is whether the Bankruptcy Court correctly determined that the debt allegedly owed by Debtors to Allstate Insurance Company ("Allstate") as of the date of Debtors' Chapter 13 petition was both a "debt" and "liquidated" within the meaning of the Bankruptcy Code. Bankruptcy Judge Arthur N. Votolato answered both of these questions affirmatively and granted Allstate's motion to dismiss. For the following reasons, this Court affirms.

## I. *Background*

This factual recitation is taken largely from that set forth in the Bankruptcy Court's order. During the early 1990s, Raymond Huelbig operated an auto body repair shop that did business with Allstate and other insurers. Allstate alleges, in a complaint filed in this Court on September 8, 1999, *Allstate v. Huelbig, et al.,* C.A. No. 99–426,[1] that the Huelbigs and twenty other defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.,* by, *inter alia,* conspiring to defraud Allstate out of moneys "totaling over $350,000"[2] by filing false automobile insurance claims. On February 20, 2001, Raymond Huelbig pled nolo contendere in Rhode Island Superior Court to criminal charges involving fraudulent automobile insurance claims unrelated to those presently alleged by Allstate but which occurred in a similar time frame. He received a ten-year suspended sentence, with two years of home confinement, and was ordered to pay restitution to Allstate in the amount of $2,480 (which he has done).

On the day of Raymond Huelbig's criminal plea in state court, the Debtors filed for Chapter 13 protection, which automatically stayed the conspiracy action in this court. *See* 11 U.S.C. § 362(a). There is no dispute that the events giving rise to Allstate's claims in the federal action, whatever their merits, preceded the Chapter 13 petition. Debtors proposed two Chapter 13 reorganization plans, the first of which was objected to by Allstate and ultimately rejected by the Bankruptcy Court. At the confirmation hearing on the second plan, Allstate disputed for the first time Debtors' eligibility for Chapter 13 protection and thereafter filed a motion to dismiss the petition. In December 2001, the Bankruptcy Court granted Allstate's motion for relief from the Chapter 13 stay, concluding that the issues involved in the motion to dismiss were heavily intertwined

---

1. Senior Judge Ronald R. Lagueux transferred this case to the undersigned on December 4, 2002.

2. Joint Record Appendix ("J.R.App."), Vol. I, at 56. Allstate has filed an amended proof of claim in the Bankruptcy Court listing $330,505.85 as the "Amount of Claim at Time Case Filed." (*Id.* at 163.) This Court has calculated the total of the checks itemized, (*Id.* at 164–168), to confirm this amount.

with those in the conspiracy action. The parties conducted discovery on the issues presented in the motion to dismiss, but in March 2002, frustrated by the lack of progress in either court, the Bankruptcy Court "reversed field" and vacated its order granting Allstate relief from the stay. 299 B.R. at 723. The Bankruptcy Court then granted the motion to dismiss on October 1, 2003, and this appeal ensued.

## II. *Standard of Review*

■ "A court reviewing a decision of the bankruptcy court may not set aside findings of fact unless they are clearly erroneous, giving 'due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses.'" *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997) (citing Fed. R. Bankr.P. 8013). The bankruptcy court's conclusions of law, however, are reviewed de novo. *Id.* "Insofar as the bankruptcy court's decision hinges on an interpretation of the Bankruptcy Code, it presents a question of law (and, thus, engenders de novo review)." *In re Bank of New England Corp.*, 364 F.3d 355, 361 (1st Cir.2004).

## III. *Analysis*

The relevant provision of the Bankruptcy Code states that Chapter 13 protection is available only for individuals who owe, "on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $269,250." 11 U.S.C. § 109(e).[3] Allstate's monetary claim in its complaint puts Debtors over that threshold amount, thereby theoretically disqualifying them from Chapter 13 protection. The grounds for appeal are two: whether Allstate's claim is a "debt";[4] and whether, if a debt, it is "liquidated."[5]

### A. *The Relationship Between "Claim" and "Debt"*

■ 11 U.S.C. § 101(5)(A) defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(12) defines "debt" as "liability on a claim." The question is whether "debt" and "claim" are simply the obverse of one another (i.e., when a creditor has a "claim" against a debtor, the debtor correspondingly owes a "debt" to the creditor) or whether there is some difference in kind between them.

The only Supreme Court case to provide any guidance about the relationship between a claim and a debt is *Pennsylvania Dep't. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), in which the Court decided whether restitution orders in criminal cases were dischargeable "debts" in proceedings under Chapter 13. *Id.* at 555, 110 S.Ct. 2126. In construing the term "debt," the Court stated:

> Section 101(11) of the Bankruptcy Code defines "debt" as a "liability on a claim."

---

3. It is agreed that this was the applicable threshold amount at the time that Debtors filed their Chapter 13 petition. It is now $250,000.

4. This particular issue was not presented to the Bankruptcy Court, but the Bankruptcy Court treated it as a necessary predicate to the issue of liquidation and resolved it in Allstate's favor. *In re Huelbig*, 299 B.R. at 723.

5. Debtors do not challenge the Bankruptcy Court's conclusion that the putative debt is noncontingent, *In re Huelbig*, 299 B.R. at 723, because it is undisputed that all of the events giving rise to Allstate's claims preceded the filing of the Chapter 13 petition, thereby making the debt noncontingent.

This definition reveals Congress' intent that the meanings of "debt" and "claim" be coextensive.

*Id.* at 558, 110 S.Ct. 2126.

Debtors urge the Court to read this language extremely narrowly. They argue that when the Court says that debt and claim are "coextensive," it does not mean that the terms are "synonymous" (meaning definitionally identical) (Appellants' Brief, at 16) and up to this point the Court agrees: the terms are not synonymous. But Debtors then claim that the Supreme Court's use of the word "coextensive" means "that they [debt and claim] reference the same obligation...." (*Id.*) Thus, according to Debtors, because the obligation at issue in *Davenport* was an unchallenged obligation to pay restitution that had been reduced to judgment, the debt and claim were coextensive because, to the extent that there was liability for a "claim," that "claim" was also undisputedly owed and therefore a "debt." There is nothing, however, in the discussion in *Davenport* to indicate that the Court's use of the term "coextensive" was meant to describe only undisputed claims. To the contrary, the Supreme Court endorsed a broad reading of what Congress intended when it defined debt and claim:

> Congress chose expansive language in both definitions.... For example, to the extent the phrase "right to payment" is modified in the statute, the modifying language ("whether or not the right is ...") reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a "claim" giving rise to a "debt."

*Id.* at 558, 110 S.Ct. 2126.

The overwhelming majority of courts following *Davenport* have not adopted

Debtors' view, holding instead that debt and claim are simply the obverse of one another. *See, e.g., In re Mazzeo,* 131 F.3d 295, 302 (2nd Cir.1997) ("In sum, by defining 'claim' so broadly and by defining 'debt' in terms of 'claim,' Congress has 'adopt[ed]' the 'broadest possible' definition of 'debt.'" In light of the Code's definitions, therefore, the term "debt" is sufficiently broad to cover *any possible obligation to make payment,* whether that obligation is liquidated or unliquidated, fixed or contingent, *disputed or undisputed,* and whether or not it is embodied in a judgment.") (emphasis supplied) (internal citations omitted); *In re Dow Corning Corp.,* 215 B.R. 346, 357 (Bankr.E.D.Mich. 1997) ("Any lingering dispute over the matter was put to rest when the Supreme Court held that the terms 'claim' and 'debt' have the same meaning within the context of bankruptcy."); *In re Mitchell,* 255 B.R. 345, 357–58 (Bankr.D.Mass.2000) (accepting, based on legislative history, that debt and claim are obverse propositions).

The cases relied upon by Debtors precede *Davenport* (*In re Lambert,* 43 B.R. 913 (Bankr.D.Utah 1984); *In re King,* 9 B.R. 376 (Bankr.D.Or.1981)), do not represent the majority view even before *Davenport,*[6] and do not deal precisely with the debt/claim distinction at all (*In re Ho,* 274 B.R. 867 (9th Cir. BAP 2002) (focusing on the issue of liquidation)). This Court, following *Davenport,* concludes that Allstate's claim for damages in its RICO action is a debt within the meaning of the Bankruptcy Code.

## B. *Is the Debt Liquidated?*

Although having a liquidated debt below the threshold amount is a precondition of

---

**6.** Most decisions preceding *Davenport* also came to the conclusion that "[t]he general rule is that disputed debts should be included in the § 109(e) debt calculations." *In re Pulliam,* 90 B.R. 241, 244 (Bankr.N.D.Tex.1988) (collecting cases).

Chapter 13 protection, "liquidation" is not defined in the Bankruptcy Code. "The terms 'liquidated' and 'unliquidated' generally refer to a claim's value (and the size of the corresponding debt) and the ease with which that value can be ascertained." *Mazzeo*, 131 F.3d at 304. "[C]ourts have generally held that a debt is 'liquidated' ... where the claim is determinable by reference to an agreement or by a simple computation." *Id.* (citing 2 L. King, Collier on Bankruptcy ¶ 109.06[2][c] (15th ed. rev.1997)).

■ The majority view is that a claim remains liquidated even though it may be disputed. *See, e.g., In re Slack*, 187 F.3d 1070 (9th Cir.1999) (holding that where debtor stipulates to the amount of debt but disputes liability on allegations of fraud, debt is liquidated); *United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir.1996) ("[T]he concept of a liquidated debt relates to the amount of liability not the existence of liability."); *Matter of Knight*, 55 F.3d 231, 235 (7th Cir.1995) (holding that where debtor challenges liability on a series of fines, and where no judgment had been rendered against him, debt was nevertheless liquidated for Chapter 13 purposes); *In re Loya*, 123 B.R. 338, 340–41 (9th Cir. BAP 1991) ("Thus, a disputed debt which is capable of ready determination is liquidated."); *In re Sylvester*, 19 B.R. 671, 673 (9th Cir. BAP 1982); *In re Vaughan*, 36 B.R. 935, 939 (N.D.Ala.1984) (observing that if disputed claims were deemed unliq-

uidated the courts would be flooded with bogus disputes: "If such a device were given judicial recognition it would create havoc. The unscrupulous would file a Chapter 13 petition and then 'dispute' the unsecured debts.");[7] *In re Pulliam*, 90 B.R. 241 (Bankr.N.D.Tex.1988); *In re Hutchens*, 69 B.R. 806 (Bankr.E.D.Tenn. 1987); *In re Crescenzi*, 69 B.R. 64 (S.D.N.Y.1986); *In re Blehm*, 33 B.R. 678 (Bankr.D.Colo.1983); *In re McMonagle*, 30 B.R. 899 (Bankr.D.S.D.1983).[8] Therefore, the fact that Debtors may dispute Allstate's claims does not render their debt unliquidated.

■ Debtors argue that the debt is unliquidated because it is not readily ascertainable and would require an extensive evidentiary hearing. (Appellants' Brief, at 26.) There is support for the contention that a debt is unliquidated if the nature of the dispute is such that an evidentiary hearing would be necessary to determine the amount. *See In re Wenberg*, 94 B.R. 631, 634 (9th Cir. BAP 1988) ("The definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability."); *Matter of Pearson*, 773 F.2d 751, 756 (6th Cir.1985) ("[T]he fact that evidence must be taken to determine the amount of the claim indicates that, until then, the claim was unliquidated."); *In re*

7. The converse may be equally true: "creditors ... might, wittingly or unwittingly, assert false or inflated claims in order to prevent a debtor from obtaining Chapter 13 relief." *In re Lambert*, 43 B.R. at 920.

8. There is some authority holding that entirely frivolous claims should not be included in the Chapter 13 calculus. *See In re Berenato*, 226 B.R. 819, 823 (Bankr.E.D.Pa.1998) ("[A] claim [that is] frivolous or could be proven to be contingent or unliquidated should not be

counted for § 109(e) purposes."). The question then becomes how to determine whether a creditor's claim is so unreasonable as to be "frivolous." How, for example, would a debtor challenge such a claim without "disputing" it? The majority approach does not resolve this problem but it need not trouble the Court here, as there is no suggestion by the Debtors that Allstate's claims are wholly frivolous.

*Johnson,* 191 B.R. 179, 181 (Bankr.D.Ariz. 1995) ("[T]he definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability.") (citation omitted); *In re Sitarz,* 150 B.R. 710, 725–26 (Bankr.D.Minn.1993) (holding that a claim for fraud against debtor is liquidated where damage, with time and effort, could be calculated with reference to a single voluminous exhibit).

Debtors rely heavily on *In re Ho,* 274 B.R. 867 (9th Cir. BAP 2002), but that case is readily distinguishable. There, the debtor was not named as a defendant in the parallel breach of contract action by a creditor, and there were no allegations that the debtor was personally liable at all in that action. *Id.* at 875. Here, Debtors are personally named and it is alleged that they were involved in a conspiracy for the total amount of liability. Debtors respond that various checks issued by Allstate (and allegedly forming part of the conspiracy charges against Debtors) do not name Debtors as the payees. (Appellants' Brief, at 26.) They claim that a protracted evidentiary hearing is necessary so that they can contest liability as to the checks on which they are not payees.

The Court rejects this argument. These are issues of liability (i.e., whether Allstate can prove that a conspiracy existed between Debtors and the payees on the checks) that the Bankruptcy Court rightly did not countenance in its determination of whether the debt was liquidated. Assuming Debtors' liability, which even Debtors concede is required when deciding the liquidation question (Appellants' Brief, at 23), the amount of that liability is easily ascertainable: $330,505.85. Therefore, the debt is liquidated and must be counted in determining whether Debtors are eligible for protection under Chapter 13. Since the amount exceeds the then-applicable statutory maximum of $269.250, Debtors are ineligible.

### IV. *Conclusion*

For the foregoing reasons, this Court AFFIRMS the Bankruptcy Court's dismissal of Debtors' Chapter 13 petition.

IT IS SO ORDERED.